**SHANNON (SEISMIC EXPLORATIONS, Inc., Third-Party Plaintiff) v. MASSACHU-SETTS BONDING & INS. CO. et al. (WIL-LIAMS, Third-Party Defendant).**

Civil Action No. 1014.

District Court, W. D. Louisiana,
Opelousas Division.

Sept. 20, 1945.

Voorhies & Labbe, of Lafayette, for Seismic Explorations, Inc., and Union Oil Co. of California.

St. Clair Adams, Jr., of New Orleans, for George Williams and Massachusetts Bonding & Ins. Co.

Edward F. LeBlanc, of Abbeville, for Hugh L. Shannon.

PORTERIE, District Judge.

Shannon, the plaintiff, seeks, first, a judgment in solido against the Massachusetts Bonding and Insurance Company, the Seismic Explorations, Inc., of Delaware, and the Union Oil Company of California, or, alternatively, seeks a judgment against any one of the three.

We quote the following from the petition, Article Three:

"That the cause of action and injuries herein complained of occurred in the Western District of the state of Louisiana, on the boat 'Barbette', a vessel engaged in interstate commerce and navigation over its navigable waters; that said defendant corporations named are respectively corporations of the states of Massachusetts, Delaware and California and that plaintiff is a citizen of the state of Louisiana and resides in the Eastern District of the state of Louisiana; that the matter in controversy exceeds, exclusive of interest and costs, the sum of Three Thousand & 00/100 ($3,000.00) Dollars".

■ George Williams was included in the original suit by the plaintiff, but, by amendment (hearing had thereon and the Court permitting same), making use of Act 55 of 1930 (direct-action statute), George Williams was eliminated, and his insurer, Massachusetts Bonding and Insurance Company, was retained. Then, a previous motion to dismiss, filed by the defendants, based on the want of jurisdiction, because Shannon and Williams, plaintiff and defendant, respectively, were residents of the same district, was overruled and denied.

This established the necessary diversity of citizenship, and there has been tacit admission that the amount involved is over $3,000 exclusive of interest and costs.

Next we quote all of Articles Five, Six, and Seven of the petition:

"Five. That said accident was caused by the negligence and negligent operations of the operator and/or captain of said vessel, one Robert Lemaire, who was then and there the agent, acting under the instructions, supervision and control of all of said defendants; plaintiff alleges, alternatively, that said Robert Lemaire was the employee and agent of and/or acting as such under the instructions, supervision and control of defendant Seismic Explorations, Inc., of Delaware, or, alternatively, of defendant Union Oil Company of California, or, alternatively, of defendant George Williams.

"Six. Plaintiff alleges negligence causing said accident upon the part of all of said defendants, its said operator and/or captain, agent and employee, and, alternatively, negligence upon the part and as such of said Seismic Explorations, Inc., of Delaware, or, Union Oil Company of California,

or, George Williams; that as a result of said negligence he sustained the injuries and damages herein complained of.

"Seven. Plaintiff alleges further the unseaworthiness of said vessel at said time in addition to the negligence herein complained of as causing said accident and injuries."

In order to have all the facts of the case, as they are controlling, we must quote Articles Nine, Ten, Eleven, and Twelve of the petition:

"Nine. Plaintiff alleges that the motor vessel 'Barbette' was owned by defendant George Williams, who in turn had leased same to defendant Seismic Explorations, Inc., of Delaware and/or defendant Union Oil Company of California; that defendant Seismic Explorations, Inc., of Delaware was at the time doing certain seismograph and other exploratory work for defendant Union Oil Company of California, and/or, alternatively was the agent acting as such for said last named defendant who was in turn engaged in the exploration, discovery and production of oil and gas in competition with producers of other states and for the intended as well as actual sale and transportation of said oil and gas in interstate commerce.

"Ten. Plaintiff alleges that at the time of as well as before said accident he was employed by the United States Government as an 'Inspector of Permit Work', War Department, Engineers, New Orleans District, Inspection Division, Permit Section, and was assigned for such purposes to the operations for said defendant companies, or either of them, which operations were then being conducted on White Lake, the point which the said vessel 'Barbette' was about to depart for when the accident herein alleged occurred; plaintiff further alleges that he was properly aboard said vessel, had a legal right to be on the same and/or was a licensee thereon and was assigned to said operations for said purposes with the full knowledge, consent and agreement therefor by said defendant corporations, or either of them.

"Eleven. Plaintiff alleges further that the said accident occurred in the following manner: That on the morning of June 21st, 1943, plaintiff together with the members of the crews of said defendant corporations, all assigned to operations on White Lake in Vermilion Parish, Louisiana, for the aforesaid purposes, were aboard the vessel 'Barbette' preparatory to travel there

from a point known as 'Forked Island Ferry' thence via Intra-Coastal Canal waterway to operations on said White Lake, when the hereinbefore mentioned captain and/or operator of said vessel, Robert Lemaire, negligently started the engine without first removing from the bilge the gasoline leakage which he had negligently allowed to accumulate there and without first allowing to escape the negligently accumulated gasoline vapours beneath the deck and in the cabins; that upon so doing, either a spark from a defective switch or starter wires or motor and/or by reason of the engine defectively backfiring, caused these accumulated gases and gasoline instantly to ignite causing explosion and fire which immediately enveloped the vessel, consuming it with fire and totally destroying same in a short time; that plaintiff was aboard and inside the cabin of said vessel housing the motor and was likewise surrounded and enveloped by flame, as were the others in said boat at that time.

"Twelve. Plaintiff alleges that said Robert Lemaire negligently started the engine of said vessel 'Barbette' and that said vessel, further, was unseaworthy and unsafe."

The Seismic Explorations, Inc., then filed a third-party complaint, seeking to make George Williams, and, in turn, the Massachusetts Bonding and Insurance Company, third-party defendants. Service by regular summons has been made on Williams; a copy of the complaint has been mailed to the attorney of record for Massachusetts Bonding and Insurance Company.

The content of the third-party complaint is that George Williams, a resident of the state of Louisiana, was the owner of the Barbette and was the partner or the employer of Robert Lemaire; that the Seismic Explorations, Inc., had, by verbal contract with Williams, rented or hired the Barbette, which was to be kept in a good, safe, and running condition, and also was to be furnished with a boat operator at Williams' expense (hence, Lemaire). The third-party complaint also states what was the monthly payment to be made to Williams; who was to furnish the necessary fuel to operate the boat; where the boat was to be kept; that the boat was to be at the disposal of third-party plaintiff for the transportation of its employees, and working instruments, and for the carrying of the messages of the company to and from the work location at which third-party plaintiff's crew was operating, at such time as third-party plain-

tiff might direct; that Williams had hired and employed Lemaire personally and paid him an amount unknown to third-party plaintiff; and other added items of relative unimportance. And paragraph 6 is:

"That the only control which third-party plaintiff had over the boat and its operator was to indicate the time when the boat should travel and the destination of such travel."

The third-party complaint further develops the relations between the parties involved in the original complaint. It tends to expand and develop the facts of the case. It does bring George Williams back into the case as a party, left out under Act 55 of 1930.

George Williams, and the Massachusetts Bonding and Insurance Company, moved to dismiss the third-party complaint, because: (a) It fails to state a claim against third-party defendants upon which relief can be granted; because (b) it attempts to make of the Massachusetts Bonding and Insurance Company, already a defendant, a third-party defendant; and because (c) Shannon and Williams are both residents of the state of Louisiana, the diversity of citizenship is wanting.

On this last point (c), the law is that such may exist under the theory of ancillary jurisdiction. Cases previous to the Rules: Phelps v. Oaks, 117 U.S. 236, 6 S.Ct. 714, 29 L.Ed. 888; Hardenbergh v. Ray, 151 U.S. 112, 14 S.Ct. 305, 38 L.Ed. 93; Moore v. New York Cotton Exchange, 2 Cir., 296 F. 61, affirmed 270 U.S. 593, 46 S.Ct. 367, 70 L.Ed. 750, 45 A.L.R. 1370; Alexander v. Hillman, 296 U.S. 222, 56 S. Ct. 204, 80 L.Ed. 192. Cases subsequent to the Rules: Crim v. Lumbermen's Mut. Casualty Co., D.C., 26 F.Supp. 715, 718; Bossard v. McGwinn, D.C., 27 F.Supp. 412; Kravas et al. v. Great Atlantic & Pacific Tea Co. [Peoples-Pittsburgh Trust Co. v. Davis], D.C., 28 F.Supp. 66; Satink v. Township of Holland, D.C., 28 F.Supp. 67; Crum v. Appalachian Electric Power Co., D.C., 29 F.Supp. 90; Lewis v. United Air Lines Transport Corporation, D.C., 29 F. Supp. 112; Morrell v. United States Air Lines Transport Corporation, 29 F.Supp. 757; Schram v. Roney, 30 F.Supp. 458; Barkeij v. Don Lee, Inc., D.C., 34 F. Supp. 874; Malkin v. Arundel Corporation, D.C., 36 F.Supp. 948; Adam et al. v. Vacquier, D.C., 48 F.Supp. 275, affirmed 3 Cir., 139 F.2d 347; Saba et al. v. Emil Katz & Co., Inc. et al., D.C., 55 F.Supp.

1000; Davis v. Associated Indemnity Corporation, (Daniels), D.C., 56 F.Supp. 541; Williams v. Keyes, 5 Cir., 125 F.2d 208, certiorari denied 316 U.S. 699, 62 S.Ct. 1297, 86 L.Ed. 1768; Lesnik v. Public Industrial Corporation, 2 Cir., 144 F.2d 968, 973, 974; Sklar v. Hayes, D.C., 1 F.R.D. 415; Johnson v. G. J. Sherrard Co., D.C., 2 F.R.D. 164, 165; People of State of Illinois v. Maryland Casualty Co. (Bowen), D.C., 2 F.R.D. 241, affirmed, 7 Cir., 132 F. 2d 850; United States v. Pryor, D.C., 2 F.R.D. 382; Myer v. Lyford, D.C., 2 F.R. D. 507.

■ The fact that the third-party defendant, Williams, brought back into the case, was the leading and original defendant, and was taken out of the case by amendment when the plaintiff decided to sue under the direct-action statute of the state of Louisiana, does not alter the situation more than if he were an entirely new party. The philosophy of ancillary jurisdiction in our federal courts permits the bringing into the case of Williams because, in truth, Williams is directly connected, by operation of law, with the accident, and, therefore, with the case. It is not a separate and independent new suit.

There is no merit in saying that the plaintiff does not want Williams in the case, for the plaintiff has declared in a motion that, retaining his original petition as plaintiff inviolate, under the ancillary jurisdiction created, he would accept judgment against Williams under the third-party complaint of the Seismic, without, however, releasing the Seismic if held to be jointly or solidarily bound. Accordingly, Whitmire v. Partin et al., 2 Cir., 2 F.R.D. 83 is not applicable—if it be the law. See, contra, Atlantic Coast Line R. Co. v. United States Fidelity & Guaranty Co., D.C., 52 F.Supp. 177, 186; Lommer et al. v. Scranton-Spring Brook Water Service Co., 4 F.R.D. 104, D.C., overruling, Id., D.C., 3 F.R.D. 27.

So, we overrule the motion to dismiss on this phase.

■ The motion to dismiss contains the additional contention that the Massachusetts Bonding and Insurance Company is a party defendant in the original complaint and cannot be named in a third-party complaint. · We think there is very little logic in this point, which we dispose of instanter because the Massachusetts Bonding and Insurance Company being already a party defendant and, consequently, answerable to the plaintiff does not prevent it from becoming a third-party defendant through the complaint of the Seismic Explorations, Inc., and again made answerable to the original plaintiff. Third-party plaintiff, for its benefit, seeks to doubly establish the liability of the Massachusetts Bonding and Insurance Company—on the same legal relation. There is no inconsistency. Dranoff v. Railway Express Agency, Inc., D.C. E.D.Pa.1939, 28 F.Supp. 325; United States to Use of Foster Wheeler Corporation v. American Surety Co., D.C.E.D.N.Y.1938, 25 F.Supp. 700; Dewey & Almy Chemical Co. v. Johnson, Drake & Piper, Inc., D.C. E.D.N.Y.1939, 25 F.Supp. 1021, latter two —persuasive.

The first ground of the motion to dismiss (no claim against third-party defendants upon which relief can be granted) is developed in brief by movant, George Williams.

■ First, assuming that there is joint tort-feasorship in the case, he asserts that no joint tort-feasor (the Seismic Explorations, Inc.) may bring another joint tort-feasor (presumably Williams, or Lemaire, or both) into court, except and until there would be a judgment in solido against the joint tort-feasors, and one had paid more than his share, in which case contribution would follow under the laws of Louisiana.

Even if the above legal relation were to exist (but we shall show hereinafter that it does not), we still say it is not the law of Louisiana, it is not applicable under Article 14 of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, as we have fully and definitely shown, to the best of our limited capacity, in the cases of Gray v. Hartford Indemnity Co., D.C., 31 F. Supp. 299; Id., D.C., 32 F.Supp. 335; Id., D.C., 36 F.Supp. 780. The three opinions should be read in order to show the practical operation of our rule. It covered all business contingencies and, in truth, brought about a settlement of the case without a trial on the merits.

■■ But what are the legal relations between the parties in this suit? There is only one active, physical tort-feasor, and that is Lemaire. The accountability of Williams through Lemaire is based upon the principle that a principal is liable for his agent or that an employer is liable for the torts of his employee, within the scope of his authority. Furthermore, Williams

is contractually obligated to the Seismic in the furnishing of a good, safe boat and its proper operation by Lemaire. The Massachusetts Bonding and Insurance Company comes into the case under its contract of suretyship to Williams in that it will answer for any and all claims against him in the operation of the Barbette. The tortious act of Lemaire is the sole and proximate cause of the accident. Seismic denies being the employer of Lemaire, and, consequently, denies the liability to Shannon, but it admits having entered into a contract with Williams, whereby Williams agreed to furnish service of transportation at points designated by Seismic for a fixed monthly consideration and that Williams agreed to furnish an operator for the boat at his expense and to maintain the boat. Seismic further alleges (and all the facts in these petitions must be taken as true) that Williams hired and paid Lemaire, who actually had the boat under his control and operation. It further shows, rather alternatively, that Williams breached his express or implied warranty to maintain the boat in a safe operating condition. Seismic then prays, in the event that judgment is rendered against it, that it should thereupon have judgment against Williams and the Bonding Company for such amount as it is compelled to pay. These, again, are all relations established by contract and by statutes, the Articles of the Louisiana Civil Code. There is but one wilful and intentional tort-feasor—Lemaire. Then the relation between Seismic and the Union Oil Company of California is that the explorations of Seismic by the use of the boat, crew, etc., were to discover oil and minerals for its employer, the Union Oil Company of California. Here again appears the relation of principal and agent, or employer and employee.

It is definitely clear, therefore, that there is but one tort-feasor in the case, and there is no joint tort-feasorship in the purely wilful and intentional manner.

There are no facts in this case, therefore, for the court to predicate the legal conclusions it made in the Gray Hartford case. If, however, any appellate court should think that any phase of joint tort-feasorship appears from the facts of the instant case that could give merit at all to that part of the motion to dismiss, then we still overrule the motion to dismiss for the reasons given in the three Gray-Hartford cases.

■ We feel that the present legal situation created by the facts of the petition is covered by the following language taken from George's Radio v. Capital Transit Co., 75 U.S.App.D.C. 187, 126 F.2d 219, 222, as follows:

"The difference between indemnity and contribution—in cases between persons liable for a wrong—is that in the former the law implies an agreement or obligation and enforces a duty on the primary or principal wrongdoer to respond for all the damages, whereas in the latter, there is no agreement, express or implied, but a common burden in which the parties stand in equali juri and which in equity and good conscience should be equally borne."

■ Seismic has a right of action against Williams under the substantive law of the state of Louisiana. In a suit in the state court, Seismic could call Williams into the court by warranty. Code of Practice, Article 379.

■ But even if this were not so as a matter of procedure, what is the substantive law of the state? The Louisiana cases which absolutely direct us to overrule the motion to dismiss are:

(a) Muntz v. Algiers & G. R. Co., 114 La. 437, 38 So. 410, 412. In that case the Louisiana Supreme Court said:

"The exception of no cause of action is based upon the propositions (1) that this is an action sounding in tort, and that tort feasors are not the warrantors of each other; and (2) that there is no privity between the plaintiff or the defendant in the main cause and the alleged warrantor.

"For the purposes of the exception, it must be assumed that the facts are as stated in the pleadings of the defendant (plaintiff in warranty), rather than as alleged in the petition of the plaintiff in the main cause, and the defendant has not alleged or admitted any tort on its part. It is true that the call in warranty presupposes a possibility that it may be proved on the trial that the injury complained of was the result of negligence, and that this court has already held that, if that be so, the defendant may be compelled to respond in damages to the person injured, but it does not follow that such negligence will be brought home to the defendant; nor has it been held that the defendant, if condemned for the negligence of another, may not obtain from the person through whose fault it happens indemnity for the damages it may be com-

pelled to pay, and this though there be no special contract to that effect."

We quote further:

"There is no doubt that some confusion and apparent conflict of authority exist upon the question at issue, but, whether dealing with the text of the law alone, or as interpreted by what we conceive to be the best-considered opinion, we find it impossible to sustain the proposition that the right of a defendant to call in a warrantor depends upon the question of privity vel non between such warrantor and the plaintiff in the main action, and equally impossible to deny that, as the basis for the exercise of such right, there must be a contract of warranty between such defendant and the person so called in. The remaining question therefore is whether such contract exists between the defendant now before the court and the exceptor."

(b) Sutton v. Champagne, 141 La. 469, 75 So. 209, 211. From this case we quote again the Louisiana Supreme Court:

"The solution of the problem must be that, while she is liable to the plaintiff, she has her recourse over against the person who by his act brought the responsibility upon her; and we shall so decide.

&ast; &ast; &ast; &ast; &ast;

"That the plaintiffs * * * have judgment against the defendants, Louis J. Champagne and Mrs. Maggie Sill, in solido, for the sum of $5,000," etc., "and that, upon payment of this judgment, or of any part thereof, the said Mrs. Maggie Sill have judgment over against the said Louis J. Champagne for whatever amount is thus paid by her."

This is enough to overrule this phase (a) of the motion to dismiss.

■ Moreover, specifically and additionally, the Louisiana jurisprudence goes further and says that, if it be inferred that Williams was in a remote and technical sense guilty of negligence to Shannon, thus making Williams and Lemaire joint tort-feasors, or joint tort-feasors in conjunction with Seismic or the Union Oil Company, all the parties may be brought into this suit. We mean that in this very case such a hearing and adjudication may be had in court, through trial.

The leading and important cases that support the above doctrine are:

A. There is a well-considered and oft-cited opinion by Judge Thompson of our Supreme Court in the case of Appalachian Corporation, Inc., v. Brooklyn Cooperage Co., Inc., 151 La. 41, 91 So. 539, 541, where, after recognizing "the general rule of law and jurisprudence that where two or more parties, acting in concert, or are legally held to have acted in concert, commit a wrongful act from which damages result to a third party, the party who is compelled to respond and to pay for the injury can have no action for indemnity against the other party or parties to the wrongful act," the court went further and said:

"Every rule, however, has its exception, and where, as in this case, the actual fault of the proximate cause of injury is attributable to one of the parties and the other is only technically or constructively at fault, from failure or omission to perform some legal duty, the general rule will not apply, and indemnity may be had against the one primarily responsible for the act which caused the damage."

The general facts in this case are that the Appalachian Corporation as owner of the premises on which the plaintiff was injured when he fell through a door which had negligently been left open by the Brooklyn Cooperage Company, was allowed to recover the damages which had been allowed to the plaintiff. *It had been sued alone theretofore, and there was no judgment holding it and the defendant solidarily liable.* The court went on further and said:

"Whatever act of man, declares the Code (article 2315) that causes damage to another obliges him by whose fault it happened to repair the damage. If the facts alleged in the petition are true, and they are so accepted for the purpose of this discussion, the defendant company was at fault, and through its employees created the situation which brought about the injury to Lincoln. The plaintiff, not being in possession of the property, and having no knowledge of the defective condition of the door and no opportunity to prevent the accident which befell Lincoln, could not in law or morals be said to be a culpable participant in the act of negligence."

The court, after referring to an old case, Meunier v. Duperron, 3 Mart.O.S., La., 285, 286, which held that there could be "no reparation allowed to a wrongdoer," went on to show what had been held in the case of Sutton v. Champagne, supra. It showed further that the Sincer v. Heirs of Bell, 47 La.Ann. 1548, 18 So. 755, was not applicable, and in support of its in-

stant doctrine makes the following quotation from the case of Pennsylvania Steel Co. v. Washington & Berkeley Bridge Co., D.C., 194 F. 1011, 1014:

"Careful consideration of these and other similar authorities must inevitably lead to the conclusion that in negligence cases based not upon willful wrongdoing, but growing out of legal duties and obligations —acts not malum in se but malum prohibitum—a clear distinction must be drawn between the liability of the party primarily negligent and that of one secondarily so to the extent of being liable to a third party injured. In such case, it is well settled that the second party, while he may not escape liability to the third party injured, may hold the first party, primarily negligent, for indemnity. Such ruling is sound in both law and goods morals, in that it secures greater care on the part of all engaged in the work, and lessens the danger of accidents."

B. This Appalachian doctrine was re-uttered by the appellate courts of Louisiana in the cases of St. Paul Fire & Marine Ins. Co. v. Standard Casualty & Surety Co., La. App., 3 So.2d 463, and American Employers' Insurance Co. v. Gulf States Utilities Co., La.App., 4 So.2d 628, 630. The following, taken from the latter case, is quite pertinent in the instant case:

"The first part of the above rule, to the effect that joint tort-feasors whose negligence combines in causing damage to a third person cannot enforce contribution between or among themselves, does not prevail in Louisiana, at least since the decision of the Supreme Court in the case of Quatray v. Wicker et al., 178 La. 289, 151 So. 208, where the court held that one of the joint tort-feasors who had been condemned in solido by a judgment of court for damages caused by their concurrent negligence had the right to force contribution against the other for his half of the judgment; that the rule under Article 2103 of the Civil Code providing for the contribution by solidary obligors between or among themselves for each to share his portion of the debt applies to obligations arising ex delicto as well as those arising ex contractu."

This case provoked a note at page 451, V. 4, Louisiana Law Review, March, 1942, entitled "Torts—Indemnification of Joint Tortfeasor Constructively Liable—Contribution and Indemnity Between Joint Tortfeasors."

We quote the last two paragraphs of this note:

"Greater relief may be obtained in the federal courts. A joint tortfeasor may be brought in as a party by the defendant, thus assuring the defendant's right to contribution or indemnity, regardless of the party chosen for liability by the plaintiff. (Gray-Hartford case.) A recent English statute, enacting in effect a rule of comparative negligence as between joint tortfeasors, has met the problem by allowing contribution without requiring any prior adjudication of the liability of the party from whom contribution is sought. In France the liability of joint tortfeasors is held solidary by the jurisprudence independent of any code provision on the subject. The commentators agree that the right to contribution is a necessary consequence of this doctrine and should be allowed even where there has been no previous adjudication of solidary liability. Under the doctrine of comparative negligence, this reparation may extend to full indemnity.

"The conclusion reached by the instant case (American Employers' Insurance Company v. Gulf States Utilities Company, supra) properly throws the burden of making reparation for misconduct on the party actually guilty, without danger of loss to the injured plaintiff. The case may be held out as an example of the equitable conclusions that can be reached by means of careful interpretation of the articles of the Civil Code without the necessity of special legislation."

So, we have Louisiana's academic approbation.

C. Judge Ott of the Court of Appeal of Louisiana, First Circuit, in the case of Ætna Life Ins. Co. v. Dejean, La.App., 167 So. 864, at page 867, decision affirmed by the Supreme Court of Louisiana, 185 La. 1074, 171 So. 450, says:

"One of the exceptions to the rule that a joint tort-feasor who has paid the damage cannot sue the other tort-feasors for contribution is the case where one of the persons is only technically or constructively liable, or, as it is sometimes rather inappropriately expressed, only vicariously liable. The exception to the rule was recognized by the Supreme Court of this state in the well-reasoned case of Appalachian Corporation v. Brooklyn Cooperage Co., 151 La. 41, 91 So. 539, 541."

D. As a further development and approval of this legal differentiation, we again quote from the George's Radio case, 126 F.2d, at page 221 (and note that Judge Groner has cited the Louisiana case of Quatray v. Wicker in approval):

"Some recent cases applying this principle are: Hobbs v. Hurley, 117 Me. 449, 104 A. 815; Ellis v. Chicago & N. W. Ry. Co., 167 Wis. 392, 167 N.W. 1048, 1049; Horrabin v. City of Des Moines, 198 Iowa 549, 199 N.W. 988, 38 A.L.R. 554; Underwriters at Lloyds of Minneapolis v. Smith, 166 Minn. 388, 208 N.W. 13; Goldman v. Mitchell-Fletcher Co., 292 Pa. 354, 141 A. 231; Eureka Coal Co. v. Louisville & N. R. Co., 219 Ala. 286, 122 So. 169; Quatray v. Wicker, 178 La. 289, 151 So. 208. The sum and substance of the ruling in all is that, where the parties are not intentional and wilful wrongdoers, but are made such by legal inference or intendment, contribution may be enforced. Since in the case we are considering it is admitted that the acts, out of which the judgment was had, resulted from mere negligence and were involuntary and unintentional, we are of opinion that the correct rule to apply is that just above stated. Here, as we have seen, there was no personal participation in the wrong, and the liability of both parties in the original damage suit existed only as the result of the relationship of principal and agent under the doctrine of respondeat superior or, in other words, by implication of law. In the circumstances, it would, we think, be contrary to the principles of natural justice, of reason, and of common sense, to impose unconditionally the whole loss on one of them."

E. In truth, not to make this differentiation between the wrongdoer in the *physically participative sense* and the wrongdoer in the *legally relative sense* would be a violation of the real test of the propriety of third-party impleader. This test has been said to be, in the case of United States v. Jollimore (Holland Furnace Co.), D.C. Mass., 1941, 2 F.R.D. 148, whether the third party could have been joined originally as a defendant by plaintiff, or whether the third party is liable as guarantor, surety, insurer, or indemnifier, to the principal defendant.

F. In the case of Jeub v. B/G Foods, Inc., D.C., 2 F.R.D. 238, where the consumer of canned ham, eaten at a Minneapolis restaurant, sued the restaurateur for the injury sustained from eating the unwholesome ham, the restaurateur converted himself into a third-party plaintiff and made Swift & Company, the canners of the ham, a third-party defendant, and the motion to vacate the third-party complaint because, under the Minnesota rule, no contribution was allowed between persons guilty of an intention to wrong, was overruled because the act of negligence would only be a technical violation of the state statutes. The restaurateur relied upon the wholesomeness of the canned food produced by the manufacturer.

Counsel for movant deprecates the case of Sutton v. Champagne, supra. The organ of the court, Justice Provosty, is generally admitted to have been one of the most distinguished civilians in our court of civil law—the only one in the forty-eight states. All of the advocates in the case are of accepted repute and of wide experience, and particularly in the number we note the distinguished father and partner of counsel for movant—an acknowledged specialist in the insurance law. The opinion is short, closely knit, very clear, and resembles in general character those of the French courts, a model, unfortunately, particularly as to brevity, we have not been able even to approach.

And so, again, we come to the conclusion that the motion to dismiss should be overruled.

Counsel for movant brings the Gray-Hartford case into the case. It is clear that since in the instant case there is only one wilful tort-feasor, the principle of the Gray-Hartford cases is not pertinent, since it relates to joint tort-feasors, physically wilful and intentional. This continued discussion by us, therefore, is purely dictum.

We respect counsel for saying the case is wrongly decided, when he cites, particularly, Brown v. Cranston, 2 Cir., 132 F.2d 631, 148 A.L.R. 1178, certiorari denied, 319 U.S. 741, 63 S.Ct. 1028, 87 L.Ed. 1698. This latter case has superior talent, we admit, in its authorship, but it has nothing to say about, do with, the Gray-Hartford principle, as we shall show.

Some have accepted—none has censured—the Gray-Hartford doctrine. See what Judge Deaver approvingly says in Atlantic Coast Line R. Co. v. United States Fidelity & Guaranty Co., D.C., 52 F.Supp. 177, at page 184:

"In Malkin v. Arundel Corporation, D.C., 36 F.Supp. 948, it was held that by state

statute contribution between joint tort-feasors was allowed only when a joint judgment was rendered against them and that where one was sued and brought in the other as third party, the order allowing the third party should be vacated, if plaintiff refused to amend so as to assert claim against third party. Order bringing in joint tort feasor vacated if original defendant had no right of contribution. Thompson (Brown) v. Cranston et al., D. C., 2 F.R.D. 270. That case, however, does not hold that joint tort-feasor could not be brought in as liable directly to plaintiff. It was held, in Gray v. Hartford Accident & Indemnity Co., D.C., 31 F.Supp. 299, that Rule 14 precludes a right of election of defendants in plaintiff and that defendant may bring in parties liable to plaintiff irrespective of plaintiff's election."

Again, at page 186 of 52 F.Supp.:

"Rule 14 permits a third party, alleged to be solely or jointly liable, to be brought in without regard to any question of contribution. If a joint judgment is rendered, then, in a state where contribution is allowed, the judgment would bind third party in any proceeding for contribution, and in a state where contribution is not allowed, defendant could not enforce contribution. Thus, the purpose of the rule would have been served by adjudicating plaintiff's claim and barring him from filing another suit against third party on the same claim, and would have done no violence to any state law, because contribution could be enforced or not accordingly as the state law so permitted or not. See Gray v. Hartford Accident & Indemnity Co., D.C., 31 F.Supp. 299."

And again, 52 F.Supp. at page 187:

"If it be said that, in a state where no contribution is allowed between joint tort-feasors, defendant has no interest which would permit him to bring in his joint tort-feasor, not as solely liable but as jointly liable, the reply is that the rule authorizes it in the interest of settling the whole controversy in one suit. Besides, a joint tort-feasor, when sued, generally denies his own liability and brings in third party as solely liable, in which event, if the evidence so demands, a joint judgment may be rendered. Abraham v. National Biscuit Co., 3 Cir., 89 F.2d 266, 111 A.L.R. 1313. In that way the same result is reached as if third party had been brought in as jointly liable. Such procedure could do plaintiff no harm. As said in the Gray case, supra, plaintiff would still have his judgment against defendant and if he failed to collect it from defendant, he could collect it from the third party. Moreover, if plaintiff elected to forgive third party, he could still do so by not collecting the judgment against him. Yet, the possibility of litigating the same claim in another suit against third party would be prevented. But it is sufficient to say that the rule permits defendant to bring in a third party who is solely or jointly liable to plaintiff."

In Sklar et ux. v. Hayes, D.C., 1 F.R.D. 415, 416, we find:

"Finally, there is no force to the third-party defendant's argument that he cannot be impleaded because the plaintiffs have neither sought nor as yet indicated any intention to seek relief against him. Whether or not the plaintiffs have elected to bring him in is now of no concern. Gray v. Hartford Accident & Indemnity Co., D.C., 31 F.Supp. 299 and Id., D.C., 32 F.Supp. 335."

In Adam et al. v. Vacquier, D.C., 48 F.Supp. 275, at page 276, affirmed 3 Cir., 139 F.2d 347, we have:

"Surely no plaintiff has the right of election of a defendant in an automobile-accident case, where there are, or may be, several parties at fault. The rights and liabilities of the parties are fixed at the moment of the accident. Surely those rights and liabilities may not be altered by a party who merely brings on the record in the first instance only one of the parties who may be liable. That doctrine was announced in the case of Gray v. Hartford Accident & Indemnity Co., D.C., 36 F.Supp. 780."

In the case of Brown v. Cranston, supra, a most eminent Circuit Judge, Mr. Augustus N. Hand, said that because of the provisions of the New York Civil Practice Act that no right to contribution exists between joint tort-feasors until a joint money judgment has been recovered against two or more defendants and one of the judgment debtors claiming contribution has paid more than his share of the judgment, the provisions of Rule 14, 28 U.S.C.A. following section 723c, giving the defendant the right to bring in a third-party "who is or may be liable * * * to the plaintiff" would not be permitted.

The premises for the doctrine of the Louisiana Quatray-Wicker case are different

from those of the New York Brown-Cranston doctrine.

The case of Quatray v. Wicker, supra, represents the law of the state. The question in that case is posed by the Court at page 210 of 151 So., in the following language:

"The only question therefore is whether, if one of two joint tort-feasors pays the whole amount of a judgment rendered against both of them, in solido, for the damages done by them jointly, the one who pays may compel the other to contribute half of the amount paid."

Wicker and Marchesseau were finally declared, after trial by the appellate court, to be joint tort-feasors, and liable solidarily to Quatray, the plaintiff. Hartford Accident and Indemnity Company, the insurer of Wicker, paid the whole judgment, was transferred to Wicker's rights, and then sued Marchesseau co-joint-tort-feasor, for half of the amount. The court, in a well-reasoned opinion made its conclusion in the following language:

"Our conclusion is that the Hartford Accident & Indemnity Company has the right to require Harry F. Marchesseau to contribute half of the amount of the judgment paid by the company."

 It follows quite simply, as we have said in the Gray-Hartford case, that under Rule 14 all the parties involved, even those who are tort-feasors in the wilful manner (such as were Wicker and Marchesseau), are brought into the case, and, after judgment, if there be one, the Louisiana rule of contribution between joint tort-feasors is followed. The judgment may be sought by any third party who may be, or become, subrogated, directly or impliedly, to the rights or interest of one of the joint tort-feasors.

Chief Justice O'Niell (and there is no dissent in the case) says, in the case, 151 So. at page 211:

"In Louisiana the liability of joint tort-feasors is made a solidary liability by article 2324 of the Civil Code, which was article 2304 of the Code of 1825. The French text was translated originally so as to make cotrespassers, or joint tort-feasors, liable *jointly*, but not in solido; but by Act 20 of (the 19th of February) 1844, p. 14, the article was declared 'so amended as to make the English of said article correspond with the French, and so as to make cotrespassers liable in solido.' See Joseph Rathborne Lumber Co. v. Cooper et al., 164 La. 502, 114 So. 112; Gardiner v. Erskine, 170 La. 212, 127 So. 604."

Then in the following paragraph, he says:

" * * * but the rules relating to obligations in solido, or joint obligations, are the same with regard to obligations arising ex delicta as with regard to obligations arising ex contractu, especially when they are fixed by a judicial decree."

We now quote Articles 2324, 2103, and 2161 of the Civil Code of Louisiana, in full:

"2324. *He who causes another person to do an unlawful act, or assists or encourages in the commission of it, is answerable, in solido, with that person,* for the damage caused by such act." (Italics ours.)

"2103. The obligation contracted in solido towards the creditor, is of right divided amongst the debtors, who, amongst themselves, are liable each only for his part and portion."

"2161. Subrogation takes place of right:

"1. For the benefit of him who, being himself a creditor, pays another creditor, whose claim is preferable to his by reason of his privileges or mortgages.

"2. For the benefit of the purchaser of any immovable property, who employs the price of his purchase in paying the creditors, to whom this property was mortgaged.

"3. *For the benefit of him who, being bound with others, or for others, for the payment of the debt, had an interest in discharging it.*

"4. For the benefit of the beneficiary heir, who has paid with his own funds the debts of the succession."

We first note from the language of Judge O'Niell, that our Civil Code applies the law as to solidary obligations arising ex contractu to those arising ex delicto.

Next (and we believe this to be important and controlling) Article 2324 embraces the theory that joint tort-feasorship is unconditional; it says "is answerable, in solido, with that person, for the damage caused by such act." Answerable to whom? To the plaintiff who is suing for the injury suffered; and answerable to a third-party defendant who has been sued, though a tort-feasor himself, since the obligation is a solidary one.

There is no Code Article, or any form of statute in Louisiana which is the equiva-

lent of, and has the import of, § 211-a of the New York Civil Practice Act, so specifically and by definite provision restrictive in character:

"Action by one joint tort-feasor against another.

*"Where a money judgment has been recovered jointly against two or more defendants in an action for a personal injury or for property damage, and such judgment has been paid in part or in full by one or more of such defendants,* each defendant who has paid more than his own pro rata share shall be entitled to contribution from the other defendants with respect to the excess so paid over and above the pro rata share of the defendant or defendants making such payment * * *." (Emphasis ours.)

Circuit Judge Clark, in Bates v. Miller, 2 Cir., 133 F.2d 645, at page 647, characterizes the above "the rather illusory New York law of contribution among joint tortfeasors."

A comparison of the three statements in italics shows the main distinction between the two state provisions.

We must not forget, also, that the New York case, to us, is merely persuasive. We should remember, too, that Judge Sears (approved also by Judge Crouch), when the case of Fox v. Western N. Y. Motor Lines, Inc., 257 N.Y. 305, 178 N.E. 289, 78 A.L.R. 578, was before the Appellate Division of the Fourth Department, 232 App.Div. 308, 249 N.Y.S. 623, at page 628, said:

"When a joint tort occurs, a right of contribution among the joint tort-feasors arises forthwith under the provisions of section 211-a, Civil Practice Act, * * * despite its procedural language, but the right * * * is inchoate. It is none the less real and subsisting."

The Louisiana Code Articles, supra, declare the Sears concept to be the substantive law. And, to spare in the argument, in Louisiana we have no equivalent of Sect. 211-a of New York State.

In the light of the Louisiana cases, Quatray v. Wicker, supra; Appalachian Corporation v. Brooklyn Cooperage Co., supra; Sutton v. Champagne, supra; Employers' Insurance Co. v. Gulf States Utilities Co., supra; and the Gray-Hartford cases, supra, the persuasive force, if any, of the Brown-Cranston case is totally overcome. In truth, the case is inapplicable, for the courts of the two states have held differently.

Louisiana is one of the few states in the Union that has a direct-action statute. New York has not. Louisiana should not be reactionary and stifle the provisions of the direct-action statute, should not lose the benefits of the third-party practice rule of the Federal Courts. Our courts have not remained adamant, as we have shown by the cases, and quite properly have not adhered inflexibly to the maxim ex turpi causa non oritur actio.

In Brown v. Cranston, supra [132 F.2d 634], Judge Hand said:

"In spite of the great convenience and advantage of applying Rule 14 in the present case we feel impelled to hold that we are precluded from doing this by the interpretation of the New York statutes by its highest court."

But the academic comment on American Employers' Insurance Co. v. Gulf States Utilities Co., supra, previously quoted, is:

"The case may be held out as an example of the equitable conclusions that can be reached by means of careful interpretation of the articles of the Civil Code without the necessity of special legislation."

In support from other courts, other cases of the same tenor: Tullgran v. Jasper, D.C. Md.1939, 27 F.Supp. 413; Crum v. Appalachian Elec. Power Co., D.C.S.D.W.Va.1939, 29 F.Supp. 90; Watkins v. Baltimore & O. R. R. Co., D.C.W.D.Pa.1939, 29 F. Supp. 700; Burris v. American Chicle Co., D.C.E.D.N.Y.1939, 29 F.Supp. 773; Saunders v. Goldstein, D.C.D.C.D.C.1939, 30 F. Supp. 150; United States v. R. L. Dixon & Bro., Inc., D.C.N.D.Tex.1940, 36 F.Supp. 147; Metzger v. Breeze Corporation (John J. Bergen & Co., Ltd.), D.C.N.J.1941, 37 F.Supp. 693; Kravas v. Great Atlantic & Pacific Tea Co., supra; Satink v. Township of Holland, supra; Jeub v. B/G Goods, Inc., supra; United States v. United States Fidelity & Guaranty Co., D.C., 1 F.R.D. 112; Lensch v. Boushell Carrier Co., Inc., 1 F.R.D. 200; Sklar v. Hayes, D.C., 1 F.R.D. 415; Falcone v. City of New York (Williams-Bauer Corporation), D.C., 2 F.R.D. 87; Greenleaf v. Huntingdon & Broad Top Mountain Railroad & Coal Co., D.C., 3 F.R.D. 24; Lommer v. Scranton-Spring Brook Water Service Co. v. American Oil Co., D.C., 4 F.R.D. 104;

Rerna v. Trucking, Inc., 3 F.R.D. 195; Carbola Chemical Co. v. Trundle Engineering Co., 3 F.R.D. 500.

In conclusion, for they are inherited by the instant case, we must repeat the general principles of the first Gray-Hartford case, 31 F.Supp. at page 304:

"Also, all related matters growing out of one occurrence, this highway accident, will be settled, definitely and clearly, in one action. Joint tort-feasors, if there be any, will be enabled to exercise their legal right to demand contribution among themselves. This is the law of Louisiana and it is fulfilled thus in one suit.

"Whether a case at law be civil or criminal, it is well known that more truth reaches the surface and better justice is attained, if all related matters be considered and all involved persons be heard at one and the same trial."

And from page 305, of 31 F.Supp.:

"Rule 14, by its very raison d'être, precludes a vested right of election of defendants in the original plaintiffs; the rule permits the defendant, when he converts himself into a third-party plaintiff, to bring third-party defendants into the case whether or not the original plaintiff elected to put them into the case.

"The court is of the view that privity between the Hartford Company and the Aetna Company is born from the legal relations established by the Louisiana Code, arising spontaneously from the accident and its content of negligence. See Articles 2315, 2316, 2324, and 2104 of the Civil Code of Louisiana."

And from the second case, 32 F.Supp. 335, at page 337:

"Summarizing, we believe this second motion to dismiss has shown our former opinion under test to be practical. By overruling the motion, the procedural law of the Federal courts and the substantive law of the state of Louisiana dovetail perfectly, as a whole and in smallest detail, to bring about prompt justice, freed of all technicalities of form and procedure, so often used in the past to seriously delay if not effectually defeat justice.

" * * * The dominant logic of the case after all is that no plaintiff has the right of election of a defendant to the exclusion of other defendants in an accident case, where there are, or may be, several parties at fault. The legal relation is established in its substance at the moment of the accident; parties thereafter, by technical pleading, may not alter the substantive law."

So, if there be the slightest (or, possibly, to some minds strong) indication, from the facts, that there is joint tort-feasorship of the wilful, intentional kind in the instant case (which we do not admit), the motion to dismiss by third-party plaintiff is still overruled.

In not one of the conclusions we have reached in the three phases of the motion to dismiss is there offense to the provision that the Rules (82) "shall not be construed to extend or limit the jurisdiction of the district courts of the United States or the venue of actions therein." Of course, Neirbo Co. et al. v. Bethlehem Shipbuilding Corporation, 308 U.S. 165, 60 S.Ct. 153, 84 L.Ed. 167, 128 A.L.R. 1437, applies.

A further motion to dismiss, received by us since the draft of this opinion, directed against the declaration, dated September 3, 1945, of the plaintiff, for failure to state claim, etc., for lack of service of process, and for lack of jurisdiction, presents nothing but what is already covered by our reasoning above, except the want of service of the declaration upon mover.

On this latter point, since the Seismic, third-party plaintiff, has served personal process on Williams, one of the movers (Rule 4), the subsequent mailing by plaintiff of his declaration to Williams' attorney is sufficient. Also, Williams was served personally with the original complaint. As to the Massachusetts Bonding and Insurance Company, it has been a defendant from the very beginning through regular process by and through the Secretary of State and, consequently, the mailing to it is sufficient process. Rule 5(b).

Judgment dismissing the motions to dismiss will be signed upon presentation.