151 So. 208

**QUATRAY v. WICKER et al.**

No. 31620.

July 7, 1933.

Rehearing Denied Nov. 27, 1933.

Walter J. Suthon, Jr., James W. Hopkins and William H. Talbot, all of New Orleans, for appellant.

P. M. Milner, of New Orleans, for appellee Harry Marchesseau.

O'NIELL, Chief Justice.

Dominick Quatray's minor son, Austin Quatray, was hurt in a collision between a truck and an automobile. The truck was owned by Michel Wicker and was being driven by his minor son at the time of the accident. The automobile was owned by Harry F. Marchesseau, who was driving it at the time of the accident. Dominick Quatray, for himself and for the use and benefit of his minor son, sued Michel Wicker and Harry F. Marchesseau for damages, alleging that both Wicker's son and Marchesseau were guilty of negligence, and, therefore, that Wicker and Marchesseau were liable in solido for the damages resulting from the collision. The civil district court gave Dominick Quatray a judgment against Michel Wicker for $294 for medical expenses, and for $2,000 for the use and benefit of the minor, Austin Quatray, for the bodily injuries he had suffered. The suit was dismissed as to Marchesseau. Michel Wicker appealed from the judgment against him; and Dominick Quatray appealed from the dismissal of his suit against Marchesseau. The Court of Appeal (16 La. App. 515, 134 So. 313) affirmed the judgment against Michel Wicker, but held that Marchesseau was liable in solido with Wicker, and therefore gave judgment against both Wicker and Marchesseau, in solido, for the amount for which the civil district court had given judgment against Wicker.

Wicker's truck was insured by the Hartford Accident & Indemnity Company against loss or liability for bodily injury or death, or property damage, inflicted upon any third party, to the extent of $10,000, under a policy requiring the company to defend in the name of the assured any suit alleging such bodily injury or death or property damage. The attorney for the Hartford Accident & Indemnity Company, therefore, took charge of and defended the suit for and in the name of Michel Wicker; and, when he appealed from the judgment that was rendered against him, the Hartford Accident & Indemnity Company signed, as surety, his appeal bond, for $4,500, for a suspensive appeal, thus again assuming liability (to the extent of $4,500) for any judgment that might have been rendered against Wicker by the Court of Appeal.

When the judgment against Wicker and Marchesseau, in solido, became final, the Hartford Accident & Indemnity Company paid Quatray the amount of the judgment with interest and costs, $2,476.75, and took an assignment of the judgment, with subrogation to all of the rights that Quatray and his minor son, or either of them, had against Michel Wicker and Harry F. Marchesseau, or either of them. The act of assignment and subrogation was made in the form of a sale, with a recital of the fact that the Hartford Accident & Indemnity Company was surety on Wicker's appeal bond for $4,500, and with this explanation: "It being the intent of this document and agreement to place the said Hartford Accident and Indemnity Company in the

capacity and identical position as that of the plaintiff in this suit, Dominick Quatray, individually and for the use and benefit of his minor son, Austin Quatray."

The Hartford Accident & Indemnity Company filed the act of assignment and subrogation in the civil district court, with a copy of the decree of the Court of Appeal, and obtained an order from the judge of the civil district court declaring the Hartford Accident & Indemnity Company subrogated to-the right, title, and interest of Dominick Quatray, individually and for the use and benefit of his minor son, Austin Quatray, in and to the judgment against Michel Wicker and Harry F. Marchesseau, in solido.

The Hartford Accident & Indemnity Company then obtained a writ of fieri facias, and brought garnishment proceedings against Marchesseau's employer and against a bank in which he was supposed to have money. He came into court and attacked the assignment of the judgment, as being fraudulent, collusive, and null, and averred that the payment of the amount of the judgment by the Hartford Accident & Indemnity Company to Dominick Quatray extinguished the judgment. Marchesseau propounded interrogatories to the Hartford Accident & Indemnity Company, and thereby brought out the fact that the company was the insurer of Wicker and was therefore liable for the judgment rendered against him, even before the appeal bond was given. Marchesseau obtained a writ of subpœna duces tecum, compelling the Hartford Accident & Indemnity Company to produce the policy of insurance in court. Then he filed a supplemental petition, and obtained a temporary restraining order and a rule on the Hartford

Accident & Indemnity Company to show cause why a writ of injunction should not issue to stop the execution of the judgment which he alleged had been paid and extinguished. After hearing the parties, the judge made the rule absolute and issued a preliminary injunction against the execution of the judgment. The Hartford Accident & Indemnity Company has appealed from the ruling.

The Hartford Accident & Indemnity Company claims, primarily, that, as owner of the judgment, the company is subrogated to the rights of Quatray and his minor son, and therefore has the right to collect the whole amount of the judgment from Marchesseau, or from either of the debtors in solido. The company claims, in the alternative, and in the event that the company should be held to have paid the judgment for Michel Wicker, under the company's obligation to pay as insurer, then that the company is subrogated to the right, which Wicker would have now if he had paid the judgment, to require Marchesseau to contribute half of the amount paid.

### Opinion.

■ Even though the Hartford Accident & Indemnity Company obtained from Dominick Quatray an act of sale of the judgment against Wicker and Marchesseau, in solido, the fact is that the company paid the judgment for Wicker, under the company's obligation to pay, not as surety on the appeal bond, but as the insurer of Wicker. The company, therefore, did not and could not acquire any right to proceed against Wicker for the amount of the judgment, or any part of it, but acquired such right—and only such right—as Wicker would have now, if he had paid Quatray the amount

of the judgment, to compel Marchesseau to contribute half of the amount.

The only question therefore is whether, if one of two joint tort-feasors pays the whole amount of a judgment rendered against both of them, in solido, for the damages done by them jointly, the one who pays may compel the other to contribute half of the amount paid.

Marchesseau relies upon the decision in Sincer v. Bell, 47 La. Ann. 1548, 18 So. 755, of which we quote the syllabus, viz.:

"The liability arising from negligence constituting the offense or quasi offense is to the injured party, but creates no liability, one to the other, of those to whom the negligence is imputed. Hence, if one of the wrongdoers pays the resulting damage, he thereby acquires no right of action against the other; least of all, if he has settled with the injured party, and been discharged from all liability. * * *

"Such payment simply discharges the debt of the party who pays, fixed on him by the judgment, hence gives rise to no contribution from the other alleged wrongdoer, as contribution is on the theory that payment by one has discharged another from whom the contribution is due."

This case is different from that of Sincer v. Bell, in that the amount of the damages which the Hartford Accident & Indemnity Company paid for Wicker, in this case, was represented by a judgment against Wicker and Marchesseau, in solido, for the damages. The suit of Sincer v. Bell was founded upon the fact that Sincer and Bell had been the defendants in a suit for damages, brought by several workmen who were injured by the falling of a scaffold, and who claimed that Sin-cer and Bell were both guilty of negligence and were therefore liable in solido for the injuries suffered by the plaintiffs; but Bell made a compromise settlement with the plaintiffs in that suit, and was discharged by them from further liability. The plaintiffs obtained a judgment against Sincer for the damages; and he, having paid the judgment, brought suit against Bell for contribution. The opinion rendered in the case contains an inference that, if the judgment which Sincer had paid had been rendered against him and Bell in solido, Bell would have owed compensation to Sincer. Here is the inference:

"Nor, in our view, can Sincer derive any action against Bell by the payment of the judgment. That judgment was against Sincer alone, adjudging him liable for negligence. Bell had settled, and been discharged by the parties injured. There could be, as between Sincer and Bell, no contribution arising out of that payment, for contribution, when admitted, is on the theory that payment by one discharges another also."

Sincer v. Bell, therefore, is authority for the proposition that one of two joint tort-feasors who has been judicially compelled to pay for the damages committed by them jointly has not a right of action against the other of the two joint tort-feasors who has not been judicially condemned to pay the damages. But Sincer v. Bell is not appropriate to a case where two joint tort-feasors have been judicially condemned, in solido, to pay damages, and one of them has paid the judgment and demands contribution. Whether the doctrine of Sincer v. Bell can be reconciled with the rule in Louisiana that the liability of joint tort-feasors for damages is a solidary

liability is a matter which does not concern us in the present case. In the common-law jurisdictions joint tort-feasors have no right to demand contribution from each other for the damages done. See Jack Manowitz v. Esy Kanov (Court of Error and Appeal) 107 N. J. Law, 523, 154 A. 326, 75 A. L. R. 1464; Royal Indemnity Co. v. Becker, 122 Ohio St. 582, 173 N. E. 194, 195, 75 A. L. R. 1481; Fiorentino v. Adkins, 154 A. 429, 9 N. J. Misc. 446; 13 C. J. 828 et seq. In those jurisdictions it has been observed that the rule against compelling contribution between or among joint tort-feasors sometimes works injustice between or among them, and that the rule is not founded upon the idea that to compel contribution in such cases would be inequitable, but is founded upon considerations of public policy, it being against the policy and maxims of the law to adjust equities between or among wrongdoers, or to allow a person to found an action upon his own wrongdoing. Because of that reason for the common-law rule, in some of the states where the rule prevails it is applicable only to cases where the joint tort-feasors were guilty of willful or intentional wrongdoing, and not to cases of mere negligence. 13 C. J. 30, § 23.

Six recent cases in which it was said that contribution was required on the part of joint tort-feasors where there was only negligence, but not where there was a willful wrongdoing, are Hobbs v. Hurley, 117 Me. 449, 104 A. 815 (in 1918); Ellis v. Chicago & N. W. Ry. Co., 167 Wis. 392, 167 N. W. 1048, 1049 (in 1918); Horrabin v. City of Des Moines, 198 Iowa, 549, 199 N. W. 988, 38 A. L. R. 554 (in 1924); Underwriters at Lloyds of Minneapolis v. Smith, 166 Minn. 388, 208 N. W. 13 (in 1926); Goldman v. Mitchell-Fletcher Co., 292 Pa. 354, 141 A. 231 (in 1926); and Eureka Coal Co. v. L. & N. R. Co., 219 Ala. 286, 122 So. 169 (in 1929). That distinction could hardly be reconciled with the rule, in Louisiana, that only compensatory damages, and not punitive damages, are allowable in a civil action for damages, and that the measure of damages is therefore only the extent of the loss or injury suffered, and not, in any sense, the gravity of the fault or wrongdoing which caused the loss or injury.

The facts in Royal Indemnity Co. v. Becker, supra, were exactly like they are here; and Justice Matthias, for the Supreme Court of Ohio, put the question and answered it, thus:

"The primary question presented by the record in this case is whether an indemnitor of one of two joint tort-feasors may upon full payment by such indemnitor of the judgment rendered in favor of the person injured by the joint negligence of said two parties take an assignment of said judgment and thereafter enforce contribution by the nonindemnified tort-feasor. * * *

"In our opinion the right of the indemnity company was no greater than that of its tort-feasor indemnitee, and that the attempt to accomplish by indirection what Gordon [the indemnified joint tort-feasor] could not have done directly must fail. The judgment was paid in full, and it is immaterial whether it was paid by Gordon or by his indemnitor, the Royal Indemnity Company. Whether it was paid by reason of its obligation as indemnitor, or as surety upon the supersedeas bond, such payment operates as a complete satisfaction, just as it would have done if

*payment had been made by Gordon."* (The italics are ours.)

■ We must bear in mind that, in Louisiana, the liability of joint tort-feasors for damages resulting from their concurrent negligence or wrongdoing is a solidary liability. The French commentators agree that the right to demand contribution, between or among joint tort-feasors, is a necessary consequence of the law which makes the liability of joint tort-feasors a solidary liability. In France the liability of joint tort-feasors is made a solidary liability by the jurisprudence on the subject, not by statute; and the commentators, while expressing some doubt or disapproval of the doctrine of solidary liability, agree that a necessary consequence of the doctrine is that if one of two or more joint tort-feasors is compelled to pay for the damages done by them jointly, he may demand contribution from the other or others. Larombriere, Theorie des Obligations, vol. 3, p. 366, § 67, announces that, as there is, in law, a solidary liability among all who are *condemned together* for an offense or quasi offense, he who pays the totality of the solidary judgments can invoke against his associates the legal subrogation; and that law and equity ordain that their co-operation in the act subjects them, reciprocally, to a common contribution in the debt, which is imposed upon all and which only one has acquitted. Laurent, vol. XVII, p. 324, § 321, says substantially the same thing, and, referring to the doctrine of solidary liability, says: "And here we place our finger upon the fact that the authors (and the jurisprudence) made the law, instead of confining themselves to interpreting it." Huc, Commentaire du Code

Civil, vol. VII, p. 418, quotes Laurent's comment, and, summing up the whole discussion, says that, in spite of a jurisprudence, the tendency of which does not seem to be changing, there is no legal solidary liability in the matter of civil offenses and quasi offenses. What the author means is that the solidary liability of joint tort-feasors is merely the result of jurisprudence, but, so long as it is so, the necessary consequence is that the one of the joint tort-feasors who is compelled to pay the damages may demand contribution from the other or others. See, also, Baudry-Lacantinerie, Droit Civil (2d Ed.), vol. XII, p. 390, § 1305; Planoil et Ripert, Droit Civil, vol. 6, p. 930, § 687; Pothier on Obligations, vol. 1, p. 282; Evans' Translation, p. 245.

In Louisiana the liability of joint tort-feasors is made a solidary liability by article 2324 of the Civil Code, which was article 2304 of the Code of 1825. The French text was translated originally so as to make cotrespassers, or joint tort-feasors, liable *jointly*, but not in solido; but by Act 20 of (the 19th of February) 1844, p. 14, the article was declared "so amended as to make the English of said article correspond with the French, and so as to make co-trespassers liable in solido." See Joseph Rathborne Lumber Co. v. Cooper et al., 164 La. 502, 114 So. 112; Gardiner v. Erskine, 170 La. 212, 127 So. 604.

■ It cannot be disputed that the liability of the joint tort-feasors in the case before us is a solidary liability. That is settled by the decision rendered against them by the Court of Appeal. Hence the case is governed by articles 2103 and 2161 of the Civil Code. Article 2103 declares that those who are liable in solido for an indebtedness to a third party

are liable, each for his share of the debt, to each other. It is true that the article refers to an obligation *contracted* in solido; but the rules relating to obligations in solido, or joint obligations, are the same with regard to obligations arising ex delicto as with regard to obligations arising ex contractu, especially when they are fixed by a judicial decree. Loussade v. Hartman et al., 16 La. 117; Gardiner v. Erskine, 170 La. 212, 217, 127 So. 604. Article 2161 of the Civil Code declares that subrogation takes place when a debt is paid by one who, being liable with another, or for another, for the payment of the debt, has an interest in paying it.

Counsel for the appellant contend that Harry F. Marchesseau's liability should be deemed greater than that of Michel Wicker because Marchesseau's liability resulted from his own negligence and Michel Wicker's liability resulted from the negligence of his minor son, for whom he is answerable. But the fact is that the extent of the liability of Marchesseau and Wicker, relatively, is fixed definitely by the decree of the Court of Appeal, and the cause or origin of the liability of each of them is therefore a matter of no importance now.

Our conclusion is that the Hartford Accident & Indemnity Company has the right to require Harry F. Marchesseau to contribute half of the amount of the judgment paid by the company.

It is ordered that the writ of injunction complained of be modified so as to conform with the conclusion stated herein, and that this case be remanded to the civil district court for further proceedings consistent with the opinion rendered herein. Harry F. Mar-

chesseau is to pay the costs of this appeal. The question of liability for the costs incurred or to be incurred in the civil district court are to abide the final disposition of the case.