[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 63 
During the years 1946-47, D. H. Holmes Company, Ltd., a corporation which operates a large department store in downtown New Orleans, undertook certain additions and alterations including the installation of new elevators and escalators in its store building. It employed George J. Glover Co., Inc., as contractor to do this work. During the course of the work, on the morning of September 16th, 1946, shortly before 10:00 o'clock, Miss Hilda DeCuers, while on her way to her place of employment in another nearby department store, was walking along Iberville Street near the rear entrance of the Holmes' establishment. Because of the work which was going on, there had been constructed on the sidewalk a work bench alongside the building, and material, lumber and debris were piled on the sidewalk so that a barricade had been erected which prevented pedestrians from continuing along the sidewalk *Page 64 
and made it necessary that they walk in the street at that point. Miss DeCuers did this, and while she was passing in the street near the curb she sustained injuries when several pieces of large pipe, six inches in diameter and twenty feet long, which had been stacked on the sidewalk longitudinally with the curb, became dislodged and rolled into the street, striking her and knocking her down.
She brought this suit for damages against D. H. Holmes Company, Ltd., its liability insurance carrier, Maryland Casualty Company, George J. Glover Co., Inc., and its liability insurance carrier, The Employers' Liability Assurance Corporation, Ltd., and The Crane Company, which corporation had furnished the pipe and had unloaded it and stacked it on the sidewalk and the liability insurance carrier of The Crane Company, to wit: Hartford Accident and Indemnity Co. She prayed for solidary judgment against all six defendants in the sum of $15,528. She charged negligence in the three defendants, D. H. Holmes Company, Ltd., George J. Glover Co., Inc., and The Crane Company in the following particulars: in failing to provide a safe and proper pathway for pedestrians; in negligently placing, piling and stacking heavy metal pipes in a spot and in a position which made it dangerous to passersby; in failing to take proper precautions to prevent such an accident from occurring; and in failing to provide adequate employees, watchmen and barricades to safeguard passersby.
The Holmes Company and its liability insurance carrier, Maryland Casualty Company, answered denying all negligence on the part of the Holmes Company and averring, in the alternative that if it be shown that the Holmes Company was in any way negligent, that Miss DeCuers herself had been at fault.
"In removing the barricade and endeavoring to pass on the sidewalk where building material had been placed;
"In not crossing to the sidewalk on the opposite side of the street upon reaching the barricade, in order that she might continue her passage in safety;
"In walking in the street when other means were provided for her passage; and
"In walking in the street and failing to exercise proper care and caution, for by so doing, she could have avoided injury to herself."
These defendants averred that the above acts of negligence on the part of plaintiff constituted contributory negligence and should prevent recovery by her.
The Holmes Company and the Maryland Casualty Company then averred that the George J. Glover Co., Inc., had contracted to do the work which was in progress at that time, and that in that contract the Glover Company had assumed full responsibility for any such occurrences, and the Holmes Company and the Maryland Casualty Company then called the Glover Company in warranty and prayed that, in the alternative that if there be judgment rendered against them, in turn, each have similar judgment in warranty against the George J. Glover Company, Inc.
The Crane Company and the Hartford Accident and Indemnity Company denied all of the allegations of plaintiff's petition which charged negligence against The Crane Company, and by supplemental answer then pleaded that, in the alternative that The Crane Company be held to be in any way at fault the proximate cause of the accident was the contributory negligence of Miss DeCuers.
George J. Glover Co., Inc., and The Employers' Liability Assurance Corporation, Ltd., denied any negligence on the part of the George J. Glover Co., Inc., and averred in the alternative that if it should appear that there was any negligence in the George J. Glover Co., Inc., that the contributory negligence of plaintiff should bar her recovery, and they charged specific acts of negligence practically identical with those alleged by the Holmes Company and the Maryland Casualty Company.
By supplemental answer, George J. Glover Co., Inc., alleged that by subcontract the American Heating and Plumbing Company, a partnership, had undertaken to do a certain part of the work which was then in progress and that the pipe, which *Page 65 
had been stacked on the sidewalk and which had fallen and caused the injury to Miss DeCuers, had been ordered by the said American Heating and Plumbing Company and had been placed on the sidewalk for use by that partnership, and that in the subcontract under which that partnership had agreed to perform its part of the general contract, the subcontractor had taken cognizance of the stipulations set forth in the main contract and, as a result of those stipulations, had agreed to indemnify and hold harmless the general contractor against any such claim for damages as that presented in this case. The George J. Glover Co., Inc., then called the said partnership and the individual members thereof in warranty and prayed that, in the event that it, George J. Glover Co., Inc., be held liable for plaintiff's injuries, it in turn have judgment in warranty against the said partnership and the individual members for a like amount.
The American Heating and Plumbing Company filed exceptions of no cause of action and no right of action to this call in warranty and prayed that the order permitting the American Heating and Plumbing Company, and the individual partners, to be called in warranty be set aside and annulled as having been improvidently signed. These exceptions were maintained and the call in warranty was ordered dismissed, but a rehearing was granted and, on rehearing, the exceptions were overruled. The American Heating and Plumbing Company and the individual partners then answered, denying the right of the George J. Glover Co., Inc., to call them in warranty and averring that they had nothing whatever to do with the stacking of the pipe; that none of the employees of the partnership was present at the time of the delivery or at the time of the accident, and that there was no negligence whatever on the part of the said partnership or of any of its employees.
After a lengthy trial, there was judgment in favor of plaintiff for $1,764 solidarily against D. H. Holmes Company, Ltd., Maryland Casualty Company, George J. Glover Co., Inc., The Employers' Liability Assurance Corporation, Ltd., The Crane Company and the Hartford Accident and Indemnity Company. There was also judgment in favor of defendants, D. H. Holmes Company, Ltd., and Maryland Casualty Company in warranty against George J. Glover Co., Inc., for $1,764 and there was further judgment in favor of American Heating and Plumbing Company and the individual partners, and their insurer, the Fidelity Casualty Company of New York (although that insurer was not made a party defendant in the call in warranty), and against George J. Glover Co., Inc., and its insurer, Employers' Liability Assurance Corporation, Ltd., dismissing the call in warranty of George J. Glover Co., Inc.
D. H. Holmes Company, Ltd., and Maryland Casualty Company appealed from the judgment in favor of Miss DeCuers and against those corporations. The Crane Company and Hartford Accident and Indemnity Company appealed from the judgment against those corporations. George J. Glover Co., Inc., and The Employers' Liability Assurance Corporation, Ltd., appealed from the judgment dismissing the call in warranty against the American Heating and Plumbing Company and the individual partners; and George J. Glover Co., Inc., and The Employers' Liability Assurance Corporation, Ltd., also appealed from the judgment in favor of the plaintiff and against those corporations, and George J. Glover Co., Inc., and The Employers' Liability Assurance Corporation, Ltd., also appealed from the judgment insofar as it ran in favor of D. H. Holmes Company, Ltd., and Maryland Casualty Company in warranty and against George J. Glover Co., Inc., and The Employer's Liability Assurance Corporation, Ltd.
Plaintiff has answered the appeal praying that the amount awarded her be increased to $4,000.
There is practically no disagreement over the facts and no evidence whatever to show any fault on the part of plaintiff. She was employed at another large department store located nearby and was walking along the upper side of Iberville Street between Bourbon and Dauphine Streets. When she reached that part of *Page 66 
the sidewalk across which the barricade had been erected, it became necessary that she step from the curb into the street and walk alongside the curb to the other end of the barricade, or that she cross the street to the lower side of Iberville Street.
We find no force whatever in the argument that she should have crossed to the other side of the street instead of proceeding in the street around the barricade. This course would have required her to cross the street in the path of vehicles and would have required that she again cross the street on reaching the corner of Dauphine Street. In doing so she would have been confronted with greater dangers than those which were presented by the course which she did adopt. In the numerous briefs and in oral argument, none of the attorneys for the various defendants made any suggestion whatever as to any act on her part which constituted negligence. Miss DeCuers says that "the pipes were stacked on the sidewalk one on top of the other, in a slanting position, very near the curb."
She added that "for no reason at all the pipes rolled down and hit me on the foot and threw me down, and my hand went under and the pipes came rolling down on the hand."
The real controversy arises over the question of which, if any, of the various defendants should be held responsible.
The Holmes Company owns and operates the store and it had entered into a written contract with George J. Glover Co., Inc., under which that company had undertaken to do the work of altering and remodelling a portion of the store. This contract contained two stipulations reading as follows:
"If either party to this contract should suffer damage in any manner because of any wrongful act or neglect of the other party or of any one employed by him, then he shall be reimbursed by the other party for such damage."
* * * * * *
"The contractor agrees that he is as fully responsible to the Owner for the acts and omissions of his subcontractors and of persons either directly or indirectly employed by them, as he is for the acts and omissions of persons directly employed by him."
The contract provided that the Glover Company would be paid on what is known as a "cost plus" basis, that is to say, the contractor was to keep an accurate account of all costs of labor and material and was to be reimbursed for those costs, and in addition, was to be paid a fixed percentage thereof which would represent its own cost of operation and profit. The Glover Company in turn had contracted with the partnership known as American Heating and Plumbing Company to do a certain part of the work, also under a "cost plus" contract, and this subcontract provided that this work should be performed under certain stipulations set forth in the principal contract, one of which provided that the subcontractor (the partnership, American Heating and Plumbing Company) would "* * * be bound to the Contractor by the terms of the Agreement, General Conditions, Drawings and Specifications, and to assume toward him all the obligations and responsibilities that he, by those documents, assumes toward the Owners."
The work of American Heating Company was of a nature which would have interfered with the store operations of the Holmes Company, so it was understood that that partnership would perform its work only at night after the store had closed. However, because the furnishers of the materials used by that partnership would make deliveries only in the daytime hours, the American Heating Company had no employee available to receive its material when delivered at the scene of the work, and since the Glover Company, because of the nature of its contract with the Holmes Company found it necessary to receive and check all material delivered to the "job", it was arranged by American Heating and Plumbing Company that the Glover Company would accept such material as might be delivered in the daytime for the use of the former company. Therefore, when, on September 13, 1947, the American Heating Company ordered this particular pipe from The Crane Company, The Crane Company was told to instruct *Page 67 
its driver, who would deliver the pipe, to see an employee of the Glover Company for acceptance of delivery. Accordingly, the dray or delivery receipt prepared by The Crane Company which accompanied the pipe when it was delivered at the scene on the morning of September 16th, showed the following: "See Geo. J. Glover's man for deliv."
As an additional reason for this notation, it is shown that at that time the American Company was performing other work for the Holmes Company directly and it was thought advisable to identify this particular pipe as being part of the material which was going into the contract which it was performing, as a subcontractor for the Glover Company. The record shows that the Glover Company had been notified on the day before this pipe was delivered that it would arrive on the next morning and that, accordingly, a space on the sidewalk had been cleared so that the pipe might be put there. On the next morning, which was the morning on which the accident later occurred, the driver of The Crane Company, accompanied by a helper, arrived at the scene at a time which, from the record, we fix at about 8:50 a.m. When the driver of the Crane truck reached the Holmes store, he asked for a representative of the Glover Company and learned that the proper man who should receive the shipment for the Glover Company and for the American Company could not be located at that time.
Very near to that same entrance of the Holmes establishment was the desk of H. J. Lais, who says that he was employed by the Holmes Company "in a checking capacity" and whose duty it was "to receive freight and other deliveries to D. H. Holmes." Lais was at his desk near the entrance when the pipe arrived, and he says that he knew that Enderline, the proper employee of the Glover Company, was not there just at that moment so that he, Lais, "told the driver to put this pipe off here." He says that he signed the dray receipt and that the driver and his helper unloaded four of the ten lengths of pipe which were placed on the sidewalk parallel to the curb and parallel to one another. He says: "We chocked them at each end, one in the center, * * *."
When these first four pieces of pipe had been laid alongside one another and chocked, Enderline arrived on the scene to take charge of the receiving of the pipe. Lais gave him the receipt which he, Lais, had signed so that after the completion of the delivery, he could give the receipt to the proper person. The record shows that the other six sections of pipe were then unloaded, the first three being placed on top of the four in the "valleys", the next two on top of those three and the last on top of the two so that the ten were then stacked in what all of the witnesses term "a pyramid". When this unloading and stacking was completed, the Crane employees left. This was at approximately 9:15 a.m. The accident occurred at about 9:40 or 9:45 a.m. so that between the final unloading of the pipe and the occurrence of the accident about twenty-five or thirty minutes had elapsed.
We shall first consider whether there is any liability in the Crane Company, since, so far as the record affirmatively shows, its employees were the last persons who actually handled the pipe before the occurrence of the accident. It is obvious that plaintiff could not be expected to know just what was the cause of the falling of the pipe. She was walking along the street in a place in which she was forced to walk and was under no duty to anticipate that the pipe stacked on the sidewalk would fall or roll. Nor was there any reason why she should notice just what may have caused it to do so. Under these circumstances, she had a right to rely upon the doctrine of res ipsa loquitur and to call upon those who were responsible for the presence of the pipe on the sidewalk, if they would escape liability, to show that there was no negligence on their part. Lykiardopoulo v. N. O. C. R. Light Power Co., 127 La. 309, 53 So. 575, Ann.Cas. 1912A, 976; Hake v. Air Reduction Sales Co.,210 La. 810, 28 So.2d 441; Plunkett v. United Electric Service,214 La. 145, 36 So.2d 704, 3 A.L.R.2d 1437; Horrell v. Gulf Valley Cotton Oil Co., 15 La. App. 603, 131 So. 709. *Page 68 
But the employees of The Crane Company had been gone for about one-half hour, or possibly more, and there was much activity on the sidewalk and in the street at that time of the morning. There was, in fact, a work bench on the sidewalk against the building itself alongside the pipe, and there has not been negatived the possibility that the pipe may have been struck by some one working at that work bench. Then, too, it was shown that there was considerable activity in the street, and it requires no imagination at all to picture the situation as it must have existed at that time of the morning. Mr. Lais says that trucks delivering merchandise to the Holmes Company frequently stopped at that entrance, and Mr. McCutcheon, another employee, a special officer and watchman, says that he was near the door and that there was "much traffic back and forth". He added: "It seemed like a truck came by and jarred the pipe loose."
In view of these possibilities, we do not think that The Crane Company should be held liable because we feel that the doctrine of res ipsa loquitur should not be applied without proof that there was no intervening occurrence between the stacking of the pipe and the happening of the accident, which might itself have been the cause thereof. See Hake v. Air Reduction Sales Co., syllabus No. 2, supra and Plunkett v. United Electric Service, syllabus No. 3, supra.
All of the witnesses who were present when the pipe was stacked say that it was stacked and chocked properly and in the usual way. They say that there was sand on the sidewalk which would have aided in preventing the pipe from rolling, and that, in addition to this sand, four chocks were placed on the sidewalk side of the bottom length of pipe nearest the curb. If the accident had occurred immediately after the pipe had been stacked and before any possible intervening occurrence could have caused it to fall, then under the doctrine of res ipsa loquitur the Crane Company should be held liable. But we feel, in view of the length of time which intervened and because of the many possible occurrences which might have caused the accident, it would not be proper to hold that company liable under the doctrine referred to.
We next consider the contention of plaintiff that the Holmes Company was at fault and that, therefore, it and its liability insurance carrier should be held liable. We note from the petition that it is not charged that the Holmes Company is liable because of its ownership of the adjacent premises. The only charges are directed at the negligence of that company and the other defendants in failing to provide a proper passageway, and in connection with the stacking and chocking of the pipe. As a matter of fact, under the firmly established jurisprudence of this state, no liability based on the ownership of the adjacent premises could be charged to the Holmes Company, and it could not be held responsible without evidence showing that the falling of the pipe was the result of its negligence. Far from showing this, the record establishes the fact that the Holmes Company had nothing whatever to do with the stacking of the pipe and was in no way involved or concerned with its presence on the sidewalk, except that the pipe was to be used in the carrying out of the contract by the Glover Company and its subcontractors. The Glover Company was an independent contractor and over its work the Holmes Company had no control. Its only right was to see that the contract was carried out in accordance with its terms, but it could not interfere in any way with the conduct or progress of the work.
It is well settled that where a contractor undertakes to do work for an owner under a contract which provides that the owner shall furnish the plans and specifications and that his only right shall be to insist that the job be done in accordance with those plans and specifications, the contractor does not become the agent or employee of the owner. Therefore, the owner is not liable to third persons who may be injured through fault of the contractor or his employees. Robideaux v. Hebert, 118 La. 1089, 43 So. 887, 12 L.R.A., N.S., 632; Crysel v. Gifford-Hill Co., La. App., 158 So. 264; West Bros. v. Pierson, La. App., 2 So.2d 71. This rule is applicable as well where a cost plus contract is involved as *Page 69 
where the contract provides for a fixed compensation. Standard Oil Co. v. Fontenot, 198 La. 644, 4 So.2d 634; Underwood v. Davies, 5 Cir., 287 F. 776.
The mere fact that, because of the operations of the contractor or subcontractor, a dangerous situation was created on the sidewalk alongside the place of business of the Holmes Company did not make that company liable for an accident which might result. McCormack v. Robin, 126 La., 594, 52 So. 779, 139 Am.St.Rep. 549; Henrichs v. New Orleans Public Service, Inc., et al., La. App., 192 So. 383.
Lest it be thought that the Holmes Company should be held liable because of the fact that its employee Lais may have been at fault in not making certain that the pipe was so stacked and chocked that it could not possibly roll, we hasten to say that in our opinion Lais, in undertaking to receive the pipe and to give the instructions as to the place in which it should be stacked and in assisting in chocking it, did not act as an employee of the Holmes Company, but acted in fact as an employee of either the Glover Company, who, as general contractor, was required to check in all material, or as the employee of the American Company by which partnership the pipe was to be used, or as the employee of both the Glover Company and the American Company. The Holmes Company had nothing whatever to do with receiving or stacking or otherwise handling any of the material which was to go into the work. Its employee, Lais, was not furnished for the purpose of receiving that material. He had his own job to do — to receive merchandise for the Holmes store. When he undertook to do what he did on that occasion and what he had done on other occasions, he did so not as an employee of the Holmes Company. He said that whenever material came, if the representative of the contractor or of the subcontractor was not present, "I did all I could to help them all out * * *."
We think, then, that, even if the record showed that Lais was negligent in any way in connection with the receiving and the stacking of this pipe, that negligence could not properly be charged against the Holmes Company.
We pass on to a consideration of the charge that the Glover Company was at fault, and we note again that there is no charge by plaintiff that the American Company was in any way to blame and, in fact, plaintiff did not sue that partnership, which is in the case only as a result of the call in warranty made against it by the Glover Company.
Witnesses of the Glover Company and others, too, state that it was a part of the duty of that company to receive and "check in" all material delivered for use in the job and that this duty to check in all material existed whether it was to be used by the Glover Company or by any of the subcontractors. H. J. Enderline, an employee of the Glover Company, says that it was his duty to receive and check in all such material, and when he heard that this pipe had arrived he went "out there to see if it was properly stacked and the proper amount of goods received for Glover Company."
Charles R. Spahr, the superintendent of the Glover Company, says that there was nothing unusual about the receipt by that company of such material, and that in all cases he had to check such material. He says that in doing so he acted for the Glover Company as well as in the interest of the subcontractor by whom the material was to be used.
It is clear that the Glover Company received the pipe and approved the method of stacking and chocking it, and that the pipe received was in the custody of the Glover Company from the time at which it was unloaded until the occurrence of the accident. And since the material remained in the possession and under the control of the Glover Company, we do not think that what we have said about the doctrine of res ipsa loquitur and its non-application as against The Crane Company can be said in behalf of the Glover Company, since it is apparent that the Glover Company, because of the doctrine of res ipsa loquitur, is placed under the necessity of explaining how the accident occurred.
Surely Miss DeCuers could have no knowledge of the cause of the falling of the pipe, and it follows that she had the legal right to call on the corporation or corporations *Page 70 
in whose possession it was to explain the accident and, if they would avoid liability, to prove that they were without fault. This the Glover Company has plainly failed to do, since no explanation whatever has been offered. Under such circumstances, liability could have been avoided only by affirmatively showing that, without fault on the part of the Glover Company, some intervening third party was responsible for the rolling of the pipe, and that this occurred in spite of the fact that it was properly stacked and chocked.
We think that the view which we take as to the duty of Glover Company to affirmatively show that it was without fault is not inconsistent with what we said concerning the absence of liability of The Crane Company. As to The Crane Company, because of the lapse of time, plaintiff, if she would rely upon the doctrine of res ipsa loquitur, was under the necessity of showing that no other cause had intervened during that time, and she could not, or did not, show this. In the case of the Glover Company, however, it remained in control and possession of the pipe during all of that time, and if there was an intervening cause, the duty of proving such cause was placed upon it if it would avoid the result of the presumption which is created by the doctrine of res ipsa loquitur. We, therefore, feel that there is liability in the Glover Company and in its liability insurance carrier.
We have not seen in any of the briefs nor heard anything in oral argument which would indicate that the amount allowed plaintiff is excessive. In her answer to the appeal plaintiff has suggested that the amount awarded her should be increased to $4,000. It was stipulated that she lost commissions amounting to $130, and also that her claim for loss of salary should be eliminated since all salary which she would have earned was paid to her by her employer. She was awarded medical expenses amounting to $49 and $85 for loss of clothing, so that of the total amount awarded, her, to wit $1,764, $1,500 was for suffering and physical injuries.
She says that she was "all bruised, my chin was bruised, my arm was bruised and my right leg and the great toe of my right foot was bruised * * *."
She said that she was required to remain in bed for one month, and that after that she was partially disabled for an additional three weeks. Her physician said that, in addition to general contusions, she suffered "a fracture of the distal phalanx of the right great toe and chipped fractures of the terminal phalanges of the third and fourth fingers of the right hand."
He said that she was quite nervous. Apparently his treatment consisted principally in attempting to quiet her nerves.
The record shows that she has completely recovered and that there is no permanent disability. In view of these facts the amount, $1,500, for physical injuries was correct, and the awards for actual losses are sustained by the evidence.
We, therefore, pass on to a study of the question of whether the American Company and the component partners thereof can be held liable, under the call in warranty, to the Glover Company. The contention of counsel for that Company is that the exceptions of no cause of action and no right of action should have been sustained, and that, on those exceptions, the call in warranty of the Glover Company should have been dismissed. Counsel argue that this call in warranty contains no charge in which the Glover Company "even suggested any wrongful act, neglect or fault, on the part of American."
The contention is that in the call in warranty the Glover Company should have set out in detail just what acts of the American Company rendered that partnership liable to the Glover Company in the event the Glover Company should be held liable to plaintiff. The Glover Company, in the call in warranty, alleged that the pipe had been placed on the sidewalk on orders of and for use of the American Company, and it then referred to the allegations of plaintiff's petition charging negligence. It then referred to the stipulations in the contract by which the contractor agreed to hold the owner harmless and the subcontractors agreed to hold the contractor harmless should any loss result as the fault of the subcontractor. *Page 71 
We think that, fairly interpreted, the allegations of the call in warranty are that if there was fault in the placing of the pipe on the sidewalk as alleged by plaintiff, that fault is in reality chargeable against the American Company and that if, as a result of that fault, the Glover Company could be held liable to plaintiff, then for the same reason the subcontractor should be held liable to the Glover Company. Under the circumstances, it was not necessary that the Glover Company in the call in warranty repeat against the American Company all the charges which, in the original petition, plaintiff made against the Glover Company. Accordingly, the exceptions to the call in warranty were properly overruled.
But although the exceptions were properly overruled, it seems clear from the facts that the American Company and its component partners cannot be held liable in warranty to the Glover Company. If there was any fault in the American Company in something that Lais or Enderline did, and since both those employees, — the former of the Holmes Company and the latter of the Glover Company, — in everything that they did acted as well for the Glover Company as for the American Company, the result would be that the Glover Company and the American Company would be joint tortfeasors and, as such, solidary obligors. But the American Company was not sued by plaintiff, and the inescapable result is that that company cannot be brought in by call in warranty by the other joint tortfeasors. The general rule which prevents one solidary obligor from calling on another is stated in Appalachian Corporation v. Brooklyn Cooperage Co., 151 La. 41, 91 So. 539, 541, as follows: "It is undoubtedly the general rule of law and jurisprudence that where two or more parties, acting in concert, or are legally held to have acted in concert, commit a wrongful act from which damages result to a third party, the party who is compelled to respond and to pay for the injury can have no action for indemnity against the other party or parties to the wrongful act. The rule has its foundation in public policy, that no one can allege his own turpitude or claim an advantage for his own wrong. The courts in such a case will leave the parties in the position in which they have placed themselves, and will not undertake to adjust equities between them, nor to inquire into the comparative or relative culpability as between them." See, also, Winford v. Bullock,210 La. 301, 26 So.2d 822.
It is true that it is now established that if a solidary judgment is rendered against two tortfeasors and one is required to pay the entire judgment, that one may force the other to contribute its share of the amount paid. Quatray v. Wicker, 178 La. 289, 151 So. 208. But that rule which permits contribution in certain situations applies only where the plaintiff has prosecuted the case to final judgment against both solidary obligors, and, it is settled that if the plaintiff sues only one, or, having sued both, abandons the case as to one, the one remaining in the case as a defendant has no right to insist that the other also be kept in the case as a defendant. Nor has the one sued the right to call upon the other for contribution. Spanja v. Thibodaux Boiler Works, La. App., 37 So.2d 615; Winrod v. Bullock, supra; American Employers' Insurance Co. v. Gulf States Utilities Co., La. App., 4 So.2d 628.
It is true too that there have been cases in which it has been held that though both defendants have been held solidarily liable, the liability of one was only technical and that, therefore, the one only technically liable might require the other to pay the entire judgment. Sutton v. Champagne,141 La. 469, 75 So. 209; Appalachian Corporation v. Brooklyn Cooperage Co., Inc., supra.
But if this rule which in some cases like the Sutton case permits the one solidary obligor to require the other to pay the entire amount is applicable at all to the facts of this case, it would rather work against the Glover Company than in favor of it. We say this because we feel that if, as a matter of fact, the American Company could be considered as a joint tortfeasor with the Glover Company, the liability which would result against the American Company would be purely technical, since the true fault was the negligence of Enderline, the employee of the Glover Company, who supervised and approved the stacking *Page 72 
of the pipe and under whose custody it remained until the occurrence of the accident. Thus if the American Company could be said to be liable at all that liability would result from the negligence of the employee of the Glover Company who was only technically a borrowed employee of the American Company for the purpose of receiving and stacking the pipe and maintaining custody over it. However, the Glover Company, under the well established rules to which we have already referred, had no right under the facts set forth to call the American Company in warranty. It alone, between those two, was sued and, being a joint tortfeasor, it cannot call the other joint tortfeasor in warranty. It necessarily follows that the judgment, insofar as it dismissed the call in warranty against the American Company, was correct.
The judgment appealed from is amended so as to read as follows:
It is ordered adjudged and decreed that there be judgement herein in favor of Miss Hilda DeCuers, plaintiff, and against the defendants, George J. Glover Co., Inc., and The Employers' Liability Assurance Corporation, Ltd., jointly, severally and in solido, in the full sum of $1,764 with legal interest thereon from judicial demand, until paid, and for all costs.
It is further ordered, adjudged and decreed that there be judgment in favor of D. H. Holmes Company, Ltd., and Maryland Casualty Company, and The Crane Company and Hartford Accident and Indemnity Company, dismissing plaintiff's suit as to those defendants;
It is further ordered, adjudged and decreed that the call in warranty of D. H. Holmes Company, Ltd., and Maryland Casualty Company against George J. Glover Co., Inc., is dismissed; and
It is further ordered, adjudged and decreed that there be judgment in favor of American Heating and Plumbing Company and the individual partners thereof, Edward H. Loubat, Numa I. Helwick, Leander Marx and Archibald Marx, dismissing the call in warranty filed by the George J. Glover Co., Inc. In all other respects the judgment appealed from is affirmed.
Amended and affirmed. *Page 232