115 So.2d 871 (1959)
Doris O. HAINDEL
v.
SEWERAGE & WATER BOARD and Parkway Commission Through City of New Orleans.
No. 21307.
Court of Appeal of Louisiana, Orleans.
November 30, 1959.
Rehearing Denied December 14, 1959.
*873 A. C. Occhipinti, New Orleans, for plaintiff-appellee.
Alvin J. Liska, City Atty., Ernest L. Salatich, Asst. City Atty., New Orleans, for defendants-appellants.
George Piazza, New Orleans, special counsel for Sewerage & Water Board.
Before JANVIER and McBRIDE, JJ., and JESS JOHNSON, Judge pro tem.
JANVIER, Judge.
Shortly before 6:30 o'clock and after dark on the evening of October 24, 1957, the plaintiff, Doris Haindel, at the time about 24 years of age, having alighted from her father's automobile in front of the duplex apartment in which she resided at No. 4321 Perrier Street, stepped into a hole left by the breakage of the cover of a water meter box located in the unpaved portion of the sidewalk and sustained injury when her left foot was precipitated into the hole. She brought this suit for damages against the City of New Orleans and the Sewerage & Water Board of New Orleans, charging that the city was liable because the cover of the box had been broken by the employees of the Parkway and Park Commission of the City of New Orleans to which we shall later refer as the Parkway Commission, and because the city, although it had notice of the condition of the box cover, had failed to remedy the defect and had failed to place around the broken cover any barricade to warn pedestrians of the danger, and charging that the Sewerage & Water Board was liable since that independent agency which maintained the water and sewerage system of the city had failed to repair the box although it had notice of the defect.
After the overruling of its exceptions, the city answered, denying that there had been any negligence or neglect of duty on its part, denying that the sidewalk was in a defective condition, and especially averring that if there was any defect in the sidewalk, it had no knowledge thereof either actual or constructive, and in the alternative especially averring that the plaintiff had been guilty of contributory negligence in stepping into the hole which, if her charges were true, was apparent, and also in walking from the automobile to the entrance of her residence at a dangerous point when there was another entirely safe route available to her.
The Sewerage & Water Board answered, averring that if the cover of its box was broken, it had no knowledge thereof until after the occurrence of the accident, and particularly averring that plaintiff herself was guilty of contributory negligence in walking in the area in which the water meter box was located, in failing "to use proper portion of the sidewalk," and in "that she unnecessarily chose a hazardous area in which to walk."
There was judgment dismissing the suit as against the Sewerage & Water Board, but in favor of plaintiff against the City of New Orleans in the sum of $1,557. From this judgment only the City of New Orleans has appealed.
Since the plaintiff herself did not appeal from the judgment which dismissed her suit as against the Sewerage & Water Board, that original defendant is no longer involved in this controversy. There is abundant authority for the principle that, where in a suit against two defendants who, *874 by plaintiff, are alleged to be solidarily liable, one of the defendants is dismissed and there is no appeal by the plaintiff, an appeal by the other defendant cast in the judgment has no effect as against the defendant who was not cast.
Following the decision in Quatray v. Wicker, 178 La. 289, 151 So. 208, in which the Supreme Court held that, where there is a final judgment against two solidary obligors and one pays the judgment, contribution may be demanded from the other, there was on several occasions presented the question of whether, where the suit is dismissed as against one of the solidary defendants, the other by appeal may retain in the case as a defendant the one who was dismissed. And in these cases it was held that such an appeal has no effect as against the defendant in whose favor the judgment was rendered. We so held in Spanja v. Thibodaux Boiler Works, La.App., 37 So. 2d 615, and the Supreme Court refused to grant a writ of certiorari. See also Aetna Life Ins. Co. v. De Jean, 185 La. 1074, 171 So. 450; Kahn v. Urania Lumber Company, La.App., 103 So.2d 476; 10 La.L.Rev. at page 248.
It is interesting to note that in the Spanja case we referred to Article 571 of our Code of Practice which gives the right of appeal "to third persons not parties to such suit, when such third persons allege that they have been aggrieved by the judgment," [37 So.2d 617] and held that even under this article a defendant cast may not by appeal retain the other defendant in the case. We said:
"We think it would be illogical to hold that though as a party to the litigation the appellant has no rights as against the other defendant, nevertheless because of the effect of Article 571 the appellant here could be treated as a third party aggrieved and permitted to appeal."
Our decision was rendered in 1948 long before the enactment of the Third Party Practice Act, Act 433 of 1954, LSA-R.S. 13:3381 et seq.
Later in Kahn v. Urania Lumber Company, 103 So.2d 476, 478, the Court of Appeal for the Second Circuit was confronted, among other contentions, with the question of whether as a result of the Third Party Practice Act one solidary obligor might assert any right or claim against another unless and until a final judgment had been rendered against both and one had paid the judgment. The Court stated the principle as follows:
"The general rule of law well established in the jurisprudence of this State is there is no right of contribution between joint tort-feasors unless and until they have been condemned in a judgment in solido, and then only in favor of the joint tort-feasor who has paid the damages award. Quatray v. Wicker, 178 La. 289, 151 So. 208; Aetna Life Ins. Co. v. De Jean, 185 La. 1074, 171 So. 450; Appalachian Corp., Inc. v. Brooklyn Cooperage Co., Inc., 151 La. 41, 91 So. 539; Winford v. Bullock, 210 La. 301, 26 So.2d 822; Sincer v. Widow and Heirs of Bell, 47 La.Ann. 1548, 18 So. 755; Toye Bros. Yellow Cab Co. v. V-8 Cab Co., La.App., 18 So.2d 514; Spanja v. Thibodaux Boiler Works, La.App., 37 So.2d 615; DeCuers v. Crane Co., La.App., 40 So.2d 61; May v. Cooperative Cab Co., La. App., 52 So.2d 74."
We conclude that when the plaintiff failed to appeal from the judgment insofar as it dismissed the suit as against the Sewerage & Water Board, the controversy insofar as that defendant was concerned came to an end.
It is the contention of plaintiff that employees of the Parkway Commission of the City of New Orleans in removing a tree located on the sidewalk had permitted a large branch to fall on a water meter box located in front of the residence occupied by her and had broken the top of the box, thus *875 creating a trap into which she, on the evening in question, stepped with the unfortunate result already referred to.
In his reasons for judgment the District Judge set forth his findings of fact, and since we are unable to say that the record justifies a holding that these findings are obviously incorrect, we shall accept them as correct and quote them as follows:
"The Court has had a great deal of difficulty in reaching a decision in this matter.
"When the case was first heard on July 2, 1958, Frank W. Manning testified, as a witness for plaintiff, in part, as follows:
"`The tree was very huge, and it was quite a task removing it, and I watched them with a great deal of interest in the removal of the tree.
"`When they debushed the tree, they finally got to the very heavy limbs, and some of these were as much as ten or twelve inches, or fourteen inches, in diameter, which they would saw a piece off, and attempt to lower it by a rope swinging off of another part of the tree.
"`Well, these stumps probably weighed three, four hundred pounds, and they hit the ground with quite a bit of impact and I noticed on one occasion they had hit this man hole cover. You could tell when it struck. It had a crashing sound.
"`I even pointed out to one of the men on the treeI thought probably it would have damaged the pipes and cut off the water supply, and he pointed out that they would take care of it immediately, which they evidently didn't do.'
"It will be noted that this is positive testimony.
"On November 26, 1958, the City called Messrs. Lesa, Peralta, Salvaggio and Pustanio, who worked in helping to cut the tree.
"Their testimony was negative, and there seemed to be a hiatus in their testimony.
"One of the workmen, an acting foreman, was not called. He can not be located. Peralta did not work on the second day, and Pustanio worked only on the second day.
"The Court can not consider this testimony as overthrowing the positive testimony of Mr. Manning.
"The Court is of the opinion that the broken water meter cover created a trap, of which plaintiff was unaware. There is no evidence in the record showing that plaintiff knew of the existence of this trap, and she denies knowledge thereof.
"In the Court's opinion, these employees of the City of New Orleans, who are also employees of the Parkway Commission, simply forgot to notify Mr. Quartana or anyone else of the breakage so that he could have notified the Sewerage & Water Board that the broken water meter cover was there in order to give the Sewerage & Water Board an opportunity to repair or replace it.
"They simply forgot to put a barrier at the water meter until the Sewerage & Water Board came and replaced the cover.
"The Court can not see how, under the evidence and the law cited by it, it can hold the Sewerage & Water Board in this matter, and it will have judgment in its favor dismissing plaintiff's suit at her costs.
"On the other hand, the City of New Orleans contends that it was engaged in the performance of a governmental function, citing three authorities. The court does not believe that these authorities are similar to the case at bar.

*876 "At the request of counsel for the City the court visited the scene of the occurrence, and noted that the water meter is about eighteen inches away from the sidewalknear enough to the sidewalk to be a part of the sidewalk for the intent and purpose of plaintiff at the time of the occurrence. Therefore, the court believes that the law relative to sidewalks applies in this case, in the absence of any authority in which the facts are similar to this matter.
"In the alternative, the City claims that plaintiff was guilty of contributory negligence, which bars her recovery, urging that, inasmuch as other neighbors knew of the defect, she should have known about it. The court does not feel that it can adopt this theory in view of the circumstances in this case. Each case stands upon its own set of facts; and try as it will, the court can not see why plaintiff in this instant case is not entitled to recover.
"The plaintiff was about 24 years of age at the time of the occurrence. She is neat, petite and comely in appearance. The scar she has on her leg is plainly visible through the stocking she was wearing in court when the trial commenced. The scar was medium brown in color, but may become lighter with the passing of time. That is, of course, only conjectural; the court is compelled to take the case as it finds it.
"On a young lady of her appearance, a scar of this nature is, in the court's opinion, a physical liability which detracts from the appearance of her leg.
"If she did not have this injury to her leg, the court would hold that $500.00 for her pain and suffering would be sufficient; but the court is confronted with this scar, which has caused her embarrassment. Therefore, the court feels that an additional judgment of $1,000 should be rendered for this scar, and $57.00 for medical expenses, or a total of $1,557.00.
"This judgment will be against the City only, with costs and interest, as prayed for.
"The court realizes that this is a very close case, and there is no precedent which the court can rely upon under the facts; but believes that if it is in error, it is better to err in favor of plaintiff and the general public whose interests must be protected."
When we come to consider the case as against the city, we deem it advisable to add a short statement, for while we find ourselves unable to disagree with the findings of the District Judge there is room for doubt on the question of whether the city had knowledge of the defect.
The record convincingly shows that the tree in question was debushed on October 1 and 2, 1957, and that the accident to Miss Haindel occurred on October 24, 1957. It is further shown that when the tree was debushed only small branches and leaves were trimmed off, and that the trunk itself and the heavy branches were allowed to remain and were not removed until the early part of the year 1958. If then Mr. Manning, a witness for the plaintiff, actually saw the employees of the Parkway Commission drop a large three or four hundred pound branch on the box and break it, it is difficult to understand how he could have seen this before the accident occurred since, as we have said, no large branches were removed until several months after the occurrence of the accident. Nevertheless, the District Judge having seen and heard all the witnesses concluded that Mr. Manning did see the box cover broken and did call this to the attention of the employees of the Parkway Commission at that time.
The question of whether the city had notice that there was a defect resulting from the breakage in the cover of this box is a *877 vital one as there could be no liability in the city for damage resulting from such a defect unless the city had knowledge of it either actual or constructive.
We feel that authority is not necessary to evidence the well established principle that a municipality, even though performing a governmental as distinguished from a proprietary function, may be held liable for damage resulting from defects in streets and sidewalks if it has received notice of such defects and, within a reasonable time, has failed to repair them. If authority is necessary, many will be found cited in Miller v. City of New Orleans, La. App., 152 So. 141, 142, 145.
Accepting then as an established fact that Mr. Manning directed the attention of the employees of the Parkway Commission of the city to the fact that the cover had been broken, we approach the question of whether that constituted such notice as is necessary if the city is to be held liable.
There is no doubt that a notice to be effective must be given to the proper department of the municipality and that the proper department is that department which has charge of the particular agency or the particular location in which the defect exists.
Again referring to Miller v. City of New Orleans, supra, we note that, as stated in Ruling Case Law, Vol. 13, sec. 283, page 345:
"Whether knowledge of an obstruction or defect in a highway on the part of a municipal officer or employee is to be deemed the knowledge of the municipality, depends on whether or not the officer or employee has any duty to perform in regard to its removal. * * *"
On behalf of the city it is shown that, although the Parkway Commission is an agency of the city and has charge of shrubbery and trees and planting in and beautification of parks and streets, it has nothing whatever to do with repairing of defects in streets or sidewalks, and from this fact it is argued that, even though the employees of the Parkway Commission were told of the defect, that did not constitute effective notice to the city.
We think that if the break in the meter box cover had not been caused by employees of the Parkway Commission, notice to an employee of that department would have had no effect. If a person should notice in a city street or sidewalk a defect and that person, by mere coincidence, should happen to see an employee of the Parkway Commission and should tell that employee of the defect which he had seen, it would be proper to hold that that did not constitute such notice as should make the city liable for damage resulting from failure to make the necessary repairs.
However, here we find two facts which seem to us to distinguish this case from that phypothetical situation which we have just stated. Here, the Parkway Commission, while it has nothing to do with street or sidewalk repairs, does perform services closely akin to the keeping of streets and sidewalks in proper condition. Furthermore and more important here the breakage itself, under the facts found, was made by the very employees of the Parkway Commission who were notified of the defect. Under these circumstances and because of these rather unusual facts, we feel that the notice given was proper notice to the city and that, if the city was under any obligation to repair the defect in the particular locality in which it was, it did receive a proper notice of the defect. There is authority here and elsewhere for this view.
In 63 C.J.S. Municipal Corporations § 825, p. 163, appears the following:
"Municipal corporations are chargeable with knowledge of their own acts, *878 or those ordered by them; and therefore whenever defective conditions in streets are due to the direct act of the municipality itself, or of persons whose acts are constructively its own, no notice is necessary to charge the municipality with liability. * * *."
This principle has been recognized in Louisiana by the Court of Appeal for the Second Circuit in Todaro v. City of Shreveport, 170 So. 356, 363, in which the plaintiff was injured as the result of the negligence of an independent contractor employed by the City of Shreveport. That Court cited with approval the First Edition of Corpus Juris, Vol. 43, section 1820, and quoted a statement practically identical with that which we have just above quoted from Corpus Juris Secundum, as follows:
"Municipal corporations are chargeable with knowledge of their own acts, or those ordered by them; and therefore whenever defective conditions in streets are due to the direct act of the municipality itself, or of persons whose acts are constructively its own, as where work is done under contract with the municipality, or, as held in some cases, where the defect is created by persons acting under a license or permit from the municipality, no notice need be shown, or, as it is otherwise stated, notice of the defect is necessarily implied in such cases."
It is true that the Supreme Court of Louisiana, after granting a writ of certiorari in the Todaro case (187 La. 68, 174 So. 111, 112), disagreed with the Court of Appeal in its ultimate finding, but did so for the reason, as stated in the opinion of the Supreme Court, that the doctrine set forth in the above quotations did not apply since the work was done by an independent contractor. The Supreme Court held that, so far as the city was concerned, the doctrine of respondant superior did not apply.
"* * * where the Court of Appeal erred, in our opinion, is in holding that, despite the fact that the doctrine of respondeat superior did not apply, the City of Shreveport was liable because of its duty to keep its sidewalk in a safe condition."
The Supreme Court did not find fault with the application of the rule where the defect is caused by the department to which notice of the defect is given. We, therefore, repeat our conclusion that, where notice is given to an agency of a municipality, which agency itself causes the defect, notice to that agency of the defect is sufficient to hold the municipality liable even though the agency of the municipality to which notice is given is not the agency or department which is required to remedy such defects.
We are next confronted with the question of whether the defect which is here complained of was in such a place as would justify a holding that it was a part of the sidewalk or of the street and was therefore in the category of things or places which the city is obligated to keep in proper repair.
We think it quite true that, though a municipality acting in a governmental capacity may nevertheless be held liable for the damage caused by defective streets and sidewalks, liability does not extend to places in neutral grounds or other similar locations in which pedestrians may not be expected to congregate or walk. The argument of the city on this point is that the meter box was not in the paved portion of the sidewalk, and that, for that reason, even if the city had notice of its condition, it should not be held liable for the damage which resulted from fault to make the repairs. The record shows, by the testimony of a civil engineer, that the surface of the street and the surface of the unpaved portion of the sidewalk and the surface of the paved portion are all level, each with the others; *879 that there is no curb which would designate the edge of the sidewalk. The meter box in question was located not on the paved portion of the sidewalk, but about two feet from it towards the roadway portion of the street. It is very obvious from the testimony of the civil engineer and of the other witnesses that the entire surface of the area of which the meter box is located was one continuous area used by pedestrians and particularly used by persons in alighting from automobiles in going into the adjacent residences. It is shown also that, in alighting from the car on the night in question, Miss Haindel walked directly towards the entrance of her residence and that this meter box was located directly in the line in which she was walking.
Counsel for the city in their brief state that in the case at bar "the area was seldom used by pedestrians." The record leaves no doubt at all that this particular area was frequently used by pedestrians and that it was absolutely necessary that persons domiciled in that apartment use that particular area in going from automobiles to their residences.
Under the circumstances we think it proper to say that, though the box was not located in the paved portion of the sidewalk, it was located in a portion of the sidewalk and in a portion over which pedestrians might often walk. As a matter of fact, we note from the City Code, section 43, page 606, that the "term `sidewalk' shall include that area extending from the property line to the gutter curbing."
While it is true that in Waggoner v. City of Minden, 16 So.2d 150, 152, the Court of Appeal for the Second Circuit had before it a case which involved a meter box located between the paved portion of the sidewalk and the curb and held that the city was not liable, it did so because it found that no defect existed. As to notice, the Court made the following statement:
"* * * There is not the slightest showing that the City, its agents or employees, were aware of any defect constituting a danger, menace or hazard to the public."
We next consider the contention that plaintiff was guilty of contributory negligence and we find ourselves in agreement with the conclusion of the District Judge that "in view of the circumstances of this case," it should not be held that plaintiff was herself at fault.
The meter box, according to the testimony of the civil engineer, was "directly in line with the entrance to 4321 Perrier Street." This was the residence of plaintiff. Therefore, when she stepped on the broken box cover, she was walking in a direct line from the automobile from which she had alighted to her front door. It is true that it seems probable that most of the neighbors knew of the defect and it is argued from this that plaintiff herself must have known of it. The District Judge found that she did not know of it. But even if she had seen the break sometime before the accident and on that night had overlooked it, we do not think that this momentary lapse of recollection would justify a holding that she was contributorily negligent. She alighted from the automobile after dark and very naturally walked straight towards the door of her residence and overlooked the fact, if she knew of it, that the box cover was broken. This was not culpable negligence.
In his reasons for judgment the District Judge set forth the extent of plaintiff's injuries. We agree that the amount awarded is correct.
Accordingly, the judgment appealed from is affirmed at the cost of appellant.
Affirmed.
REGAN, J., absent, takes no part.