REID, Judge.
This action was brought by Sherman Jackson and his wife, Laura McField Jackson, seeking damages from the Parish of East Baton Rouge in recompense for personal injuries sustained by the wife and medical expenses incurred by the husband in the treatment thereof. Exceptions of no cause and no right of action filed by defendant were overruled and the Trial Court rendered judgment in favor of Laura McField Jackson in the sum of $2,000.00 for pain and suffering and disfiguring scars on her legs, and in the sum of $130.00 for loss of wages, together with legal interest - from judicial demand until paid, and rendered judgment in favor of Sherman Jackson in the sum of $40.00 for medical services. The Court also fixed the expert witness fee of Dr. Louis J. James at the sum of $50.00, to be taxed as cost and all cost to be paid by defendant.
It was shown on the trial of this case that the plaintiffs owned a home at 237 Mary Street, between Highland Road and Napoleon Street in Baton Rouge, Louisiana. The right-of-way for Mary Street is 40 feet in width, the center paved portion is 15 feet in width, and there is a distance of approximately 12J4 feet on each side of the paved portion constituting an unpaved right-of-way. Plaintiffs’ residence is on the north side of the street and is fronted by a 4-foot picket fence. A large tree grew in the unpaved portion of the right-of-way in front of plaintiffs’ property. Plaintiffs felt the limbs of said tree which were overhanging their residence were endangering the roof and they requested defendant to remove the same. After examining the tree the representatives of the Public Works Department of East Baton Rouge Parish informed plaintiffs that it would be necessary to remove the entire tree because it was decayed from the inside. The tree was cut on June 19, 1959. Most of the logs were stacked to the west of the stump, away from the entrance gate to plaintiffs’ property, but two heavy limbs were left directly in front of the gate at the entrance to the walkway leading to the front door of the house. Plaintiffs contend they requested the defendant a number of times *591 to remove the limbs from the passageway, but to no avail. In the early evening on July 6, 1959, Mrs. Jackson was walking from her house to the automobile parked in front of the house, where her husband was waiting to drive her to a laundromat near their home, and after she walked past the gate she stumbled over one of the limbs and fell.
Counsel for plaintiffs contends that because her attention was directed to other things, Mrs. Jackson forgot about the tree limbs being there, and also that her vision was obstructed by coming out of a lighted house into the dark and that the street lights 170 feet away did not provide sufficient light to see the tree limbs. He further contends that the position of the tree limbs created a hazard and a perfect trap to trip pedestrians.
Defendant’s exception was based upon the premise of governmental immunity. In that connection the Trial Court held:
“It has been held that injuries resulting from defects in sidewalks or streets present an exception to the rule of governmental immunity. Defendant contends since the record shows there was no sidewalk as such in the immediate area, this accident cannot fit within that exception. Nevertheless, the unpaved right of way where plaintiff tripped was and had to be used as a sidewalk. The right of way in this instance, is established to be an integral part of the roadway or street and it constituted the portion set aside for use by pedestrians. The fact that it was unpaved does.not justify failure to consider it for use as a sidewalk.”
The Trial Judge went on to quote from Haindel v. Sewerage & Water Board, La. App., 115 So.2d 871, wherein the Orleans Court of Appeal held that authority is not necessary to evidence the well established principle that a municipality, even though performing a governmental function, may be held liable for damages resulting from defects in streets and sidewalks if it has received notice of such defects and, within a reasonable time, has failed to repair them.
Defendant contended that all the tree limbs were originally stacked to the west of the stump away from the immediate vicinity of plaintiffs’ gate. The Trial Judge, however, said that photographs introduced in evidence and the testimony established that two limbs were left immediately in front of plaintiffs’ residence and that since the limbs appeared to be very large and weighed several hundred pounds he did not feel it was logical to assume that the logs rolled or were moved at a later date to their place in front of the gate, and concluded: “Thus, defendant’s agents were clearly negligent in failing to remove such a dangerous obstruction, or in failing to place a barricade or lights or some other warning device around the limbs.”
Counsel for defendant said Laura Jackson was well aware of the obstruction as evidenced by the complaints by plaintiffs to defendant on several occasions prior to the accident and that therefore she was contributorily negligent in heedlessly failing to avoid the limbs of which she had prior knowledge. On this point the Trial Judge held:
“The testimony reveals plaintiff, Sherman Jackson, had the parking lights of his automobile on and the lights shone in the direction of the stump. Laura Jackson testified as follows:
‘Q. Now you testified this morning when you opened the gate it would hit the log, is that right ?
‘A. Un-huh.
‘Q. Was the gate opened or closed the night you went out of it and fell down ?
‘A. I don’t know, I really don’t know.
‘Q. Now, did you see the log before you fell on it?
‘A. No.
*592 ‘Q. You didn’t see it?
‘A. I didn’t.
‘Q. But you knew it was there:
‘A. Yes sir, I knew the log was there, but with other things on my mind, I just didn’t think about the log was out there.’ ”
The Trial Judge felt that even though it was shown that Sherman Jackson had on his parking lights, it was not established that those lights illuminated the limbs and in fact might have cast them in deeper shadow. It was established that the logs were in such a position that when the gate in question was opened it touched one of the logs. The Trial Judge went on to say:
“ * * * Under the circumstances, the logs lay as a trap. Whether or not she was thinking of their presence at the moment she stepped through the gate, they presented a danger and impeded her progress. The fact she knew or should have known of their approximate whereabouts does not bar her recovery. Under the circumstances, the limbs were an obstacle to be confronted each time she entered or departed from her house, and she was obliged to maneuver around or over them each time.”
While this Court is in agreement with most of the Trial Court’s findings of fact, we do find that the record is clear that the plaintiff, Laura Jackson, did have an alternative route from her front door to the car in which her husband was waiting. Photographs, maps and the testimony show that just a few feet east of the gate through which Laura Jackson went is another gate leading into a dirt driveway by the side of plaintiffs’ house. Sherman Jackson preceded his wife from the house and walked safely to his automobile. He took the route through the second gate which was clear of tree sections. He testified as follows:
“Q. During all of that time every time you went out of that gate, and you have testified that was the only gate you had, you had to step over that log?
A. Step over it or go around it, that’s right.
Q. Now, on the night that your wife fell did you come out of that gate before she did?
A. I didn’t come out of that gate.
Q. Where did you come from?
A. I came from the other gate next door.
Q. You came out of the other gate next door?
A. That’s right.
Q. Why?
A. Because I wanted to.
Q. Did you have any particular reason ?
A. None other than the fact that that gate was open and I went out of it. I frequently use that gate.”
His testimony varied as to whether the headlights or parking lights were on, but his testimony was quite clear that from where he was sitting in his car he could see his wife come out of the house, down the steps, along the walk, and out the gate. He testified:
“Q. Now, how do you know your wife fell over that log that appears in those pictures ?
A. I saw her fall.
Q. You could see what she fell over?
A. I picked her up off the log because she couldn’t get up, and I got out of the car and picked her up over the log. That’s how I know she fell over it.
Q. You could see the log from where you were sitting in the car?
A. Yes.
*593 Q. And you saw her fall—
A. Yes.
Q. —over the log?
A. Yes.
Q. Was the gate opened or closed when re».,* she came through it?
A. The gate was open.
Q. The gate was already open?,
A. That’s right.
Q. You are certain of that?
A. Yes.
Q. You testified previously that you had not gone through this Gate on that night?
A. I did not.
BY THE COURT:
Q. You mean you did not so testify or you did not go through the gate?
A. I did not go through that open gate.
BY MR. PARKER:
Q. You went through the other gate?
A. That’s right.
Q. And from where you were sitting you could see that the gate was open and you could see her come through the gate and fall over that section of log?
A. The gate remained open constantly because there is no fastener on the gate. There was no fastener on the gate.
Q. Is there now?
A. Yes.
Q. Could you see your fence from where you were sitting in the car?
A. Yes, I could.
Q. Now, was your wife in a hurry when she came down the steps?
A. Yes.
Q. Did you have the motor in the cat running ?
A. I don’t remember.
Q. You could see her hurrying down the steps and out the gate?
A. Yes.
Q. Did she run or walk fast or what?
A. I think she walked fast.”
We feel that the facts of this case clearly fit the recent decision of this Court in the case of Green v. Acosta, La.App., 173 So.2d 291, wherein the Court said:
“Knowledge of the condition existing should have prompted plaintiff as a reasonably prudent individual to exercise extreme care and caution in attempting to traverse such a sidewalk rather than, attempt such maneuver hurriedly and without due concern for a known peril. We believe the condition of the sidewalk such that even an attempt to negotiate it in daytime would necessitate the use of more than ordinary care, diligence and alertness. Photographs introduced in evidence clearly show a portion of the sidewalk black with oil across, its entire width upon which is superimposed debris sufficient to prompt ¡l pedestrian to extreme caution while traversing the area in daylight.
“Learned counsel for appellees vigorously contends plaintiff should be exculpated from contributory negligence herein because the condition noted constituted a trap of which plaintiff was. unaware. In this regard it is argued the sidewalk was safe when dry (as-evidenced by plaintiff having successfully passed over the area approximately thirty minutes previously) but that it. became slippery and dangerous when the rain mixed with the oil present, of which *594 latter circumstance plaintiff was unaware.
“The evidence is conflicting on the question whether the area was slippery during dry weather. Although both plaintiffs testified on trial that the sidewalk was not known to be slippery when dry, plaintiff husband, in a deposition taken prior to trial, stated the site was soft and wet from oil. However, zve fail to see wherein plaintiff could be relieved of contributory negligence herein assuming the area was not slippery during dry weather. We repeat that the sidewalk was obviously and patently dangerous and plaintiffs knowledge of the condition is shown beyond a doubt. Her knowledge necessitated exercise of care commensurate with the danger of which she was aware. We believe the condition such that a person of ordinary prudence, having knowledge of the circumstances, would not attempt to hurry across such an area at night even though the surface were dry. Knowledge of the existing state of the sidewalk should have alerted the wariest individual to exercise extreme caution and care in traveling over such a sidewalk in the dark at night even though its surface was dry. Such a maneuver was fraught with possible danger even during dry weather and the hazard therein existing could only be increased during wet weather, which circumstance must be charged to the knowledge of a reasonably prudent individual in full possession of his faculties.”
That case also points out that it is now well settled that where two paths are open to a pedestrian, one safe and the other dangerous, if he knowingly chooses the dangerous way, he cannot recover for resulting injuries. Again we emphasize that we cannot agree with the Trial Judge that there were not open to plaintiff here two pathways to avoid the logs and that there was not present here a safe and convenient way as opposed to an unsafe and obviously dangerous way. The evidence clearly disproves his contention.
We do not feel that the “momentary forgetfulness rule” would exculpate Laura Jackson from contributory negligence. We quote from Volume 63 C.J.S. Verbo Municipal Corporations § 854 b, page 210, as follows:
“b. Knowledge of Danger
“The mere fact that one, knowing of a defect or obstruction, travels on a street or public way after dark, although it is a circumstance tending to show negligence, does not per se constitute contributory negligence, particularly where the knowledge was acquired some time before, or the route selected by him was the one ordinarily traveled by the public. All the law requires is that he exercise ordinary care commensurate with the danger of which he has knowledge, taking into consideration the fact of darkness, although more caution is required in such case than if he were ignorant of the defect or obstruction, or if there were no defect, and it was daylight. In exercising such care a traveler has the right to assume that an excavation of which he had knowledge would not be left unguarded. He is, however, guilty of contributory negligence precluding recovery for consequent injuries if he fails to exercise such care and caution as the fact of such knowledge, of the darkness, or other circumstance would reasonably require of an ordinarily prudent man, as where at night he voluntarily uses a dangerous way of which he has knowledge when another safe and convenient way is open to him.
“Mere forgetfulness of a known defect will not preclude recovery for injury to one traveling in the nighttime, especially where his attention is diverted by some adequate cause, or his mind is occupied by matters of a pressing nature affording a particular reason for hur *595 rying, or where the danger is so hidden as not of itself to he a reminder of its existence, since to forget is not negligence unless it shows a want of ordinary care. On the other hand, it has been held that forgetfulness of a defect may preclude recovery where no excuse for such forgetfulness is shown.”
Certainly merely going to a laundromat would not be adequate cause to divert Laura Jackson’s attention to the dangerous circumstances nor could a trip to a laundromat be considered such a pressing matter as to afford a particular reason for hurrying and disregarding ordinary care.
When knowledge of the danger is clearly shown, the burden shifts to the pedestrian to offer testimony exculpating his or her momentary forgetfulness. We do not feel the plaintiffs in this case have done so. As this Court held in the Green case, the excuse envisioned by the “momentary forgetfulness rule” must be something apart from mere inattention itself, must result from some external circumstance and may not consist of mere mental absorption upon some other subject. It must be something reasonably calculated to induce the pedestrian to forget the danger or justify his ignoring its existence. The only excuse offered by Laura Jackson for her inattention was that she was in a hurry to get to the laundromat. This is not sufficient excuse for want of exercise of ordinary care and caution by a reasonably prudent person having knowledge of the existence of a hazardous condition.
In view of the foregoing, we do not feel it is encumbent upon the Court to pass upon the question of the governmental immunity rule as it might or might not apply in this case.
Accordingly, it is ordered, adjudged and decreed that the judgment of the Trial Court in favor of plaintiffs, Sherman Jackson and Laura McField Jackson and against defendant Parish of East Baton Rouge is hereby annulled, reversed and set aside and judgment rendered herein in favor of said defendant rejecting and dismissing plaintiffs’ claims at plaintiffs’ cost.
Reversed and rendered.
Rehearing denied.
BAILES, J., dissents from refusal to grant a rehearing.