REID, Justice.
This is a suit brought by Mrs. Bernice Major and her hubsand, Louis Major, against the Parish of East Baton Rouge, City of Baton Rouge and Hebert Realty, Inc. and The Travelers Insurance Company, insurer of Hebert Realty, Inc. for damages as a result of a slip and fall accident of Mrs. Major which happened on the sidewalk situated at the northeast corner of Baton Rouge Avenue and Cable Street intersection in the City of Baton Rouge, Parish of East Baton Rouge, Louisiana, on June 12, 1964.
Plaintiff, Louis Major, seeks judgment in the amount of $640.72 for special damages as a result of Mrs. Major’s injuries, and Mrs. Major seeks damages in the amount of $8500.00 as a result of her injuries.
The City of Baton Rouge and the Parish of East Baton Rouge filed Exceptions of no cause of action. Hebert Realty, Inc. and The Travelers Insurance Company filed Exceptions of no cause of action, on the grounds that Hebert Realty, Inc. owed no duty to maintain any sidewalks abutting its property, and that there are no allegations whatsoever in the petition of any affirmative acts of negligence on' the part of Hebert Realty, Inc. Exceptions of The Travelers Insurance Company, Hebert Realty, Inc., and the City of Baton Rouge were maintained and plaintiffs’ suit against them was dismissed with prejudice. There is no appeal from this judgment.
The Parish of East Baton Rouge filed an answer denying the allegations of negligence and plead contributory negligence on the part of Mrs. Bernice Major which negligence consisted particularly, but not exclusively, of the following:
“(a) The said Mrs. Bernice M. Major was familiar with the condition of the sidewalk in question and knew, *830 or should have known, the condition, prevailing, and failed to keep a proper lookout relating thereto.
(b) The said Mrs. Bernice M. Major was walking without maintaining a proper lookout.
(c) The said Mrs. Bernice M. Major failed to see what she should have seen and failed to take necessary-precautions for her own safety and further failed to utilize the safe area provided within the paving limits of Baton Rouge Avenue.
<(d) The said Mrs. Bernice M. Major, with full knowledge of the dangerous conditions alleged in the petition, nevertheless proceeded with utter disregard for her own safety.”
After trial on the merits the Trial Judge rendered judgment in favor of the defendant, rejecting plaintiff’s demands and dismissing this suit at their costs.
They have appealed herein from this judgment.
In regard to the question of the negligence of the defendant, Parish of East Baton Rouge, it admits the hazardous condition of the sidewalk and that it was patently and obviously hazardous and had existed for a sufficiently long period of time to constitute constructive notice. Therefore, the question of the negligence of the Parish of East Baton Rouge is no longer at issue, and the only remaining issue is the question of contributory negligence of the plaintiff, Mrs. Major.
At the conclusion of the trial the District Judge took the matter under advisement, after dictating the following statement into the record:
“I would like to say that my impression is that Mr. Hebert was correct in saying that this is kind of in the twilight zone of being apparently hazardous or safe in approaching along the sidewalk. If a person were approaching to go in the opposite direction from which Mrs. Major was traveling the slope would go uphill and it looks steep but if — that’s in P-12— and looking at picture P-11 the slope is more gradual than it appears in P-12, however, the ground around the sidewalk by erosion, I presume, has sloped off to a good extent and I don’t believe that a person going in the direction south could turn to one’s left and go around it, but I believe that as shown by picture P-12 you could step off the sidewalk to the right and go around it.
“Mrs. Major testified very clearly that her attention was not distracted, that she saw the slope or ramp, she knew it was there, she had walked on it any number of times before and never had any trouble. I think I would unhesitatingly hold that the condition should not be left there by this Parish, that is a hazardous condition, and the only thing I wish to give a little further consideration to is whether or not Mrs. Major should be held to have appraised the danger or hazard more accurately. I think that the shoes will play a part in the consideration. The shoes have no heels whatever. The sole is perfectly flat and continues from the toe to the back, the end of the shoe or slipper or sandal, whatever it is called. That would be more likely to slip on a plain surface than one with a heel. There is no protection whatever from the shoe. Of course, nobody made Mrs. Major wear that type of shoe and I believe that the main trouble with this instance, I mean I think the shoe plays a large part in the slipping.
“I will read these cases and decide it in the near future. In the meantime I will take it under advisement.”
The facts show without rebuttal that at about 9:30 of the morning of June 12, 1964 plaintiff, Mrs. Major, was walking down Baton Rouge Avenue going to her husband’s fish market on Weller Avenue. She testified that she was forty-eight years old at the time of the accident, that she did not *831 have any packages, she was familiar with the condition of the walk and realized the danger, and that she had reached the end of the concrete and she was not distracted thereby. She was aware that the ramp was there and looked when she made her step but her foot slipped and she slid down to the end of the ramp into a little depression where her foot turned and she fell on her ankle.
She testified positively that she realized that there was danger in crossing this sidewalk or this ramp. The evidence is conclusive that this condition had been there for several years. Mr. Murphey A. Callegan, one of plaintiffs’ witnesses, testified that this condition of the sidewalk had been that way for over a year. He further testified in answer to a question by Mr. Spedale, plaintiffs’ attorney, as follows:
“BY MR. SPEDALE:
Q: Do people use this portion of the sidewalk that I am pointing to right by the side of the tree where this broken concrete is?
A: Well, there is a lot of people cross here and I think they walk around that concrete, I don’t believe — those that I have noticed always walk around it.
Q: And when they walk around it they are going which way, in which direction?
A: They are going the same direction as if they were walking across the sidewalk because you have the same situation here, over here as you have on Cable going on Baton Rouge Avenue, but that’s been busted, too, on Baton Rouge Avenue and there has been several wrecks there.”
Another witness for plaintiff, Norman Chustz, Jr. testified that he lived right near this intersection and that he sees the end of the sidewalk and the ramp just about every day. He testified that “right about the tree it looks pretty dangerous, but I mean nobody has ever fell there that I know of.”
There is no question but what everybody in the neighborhood knew about the condition of this sidewalk, knew that it was-hazardous and some of them would walk around it, or at least they manipulated it so that they did not have an accident.
Mrs. Major stated that she generally walked to her husband’s place of business about once a month. Sometimes her husband would come get her in the car, and' other times neighbors would pick her up-when they were going to the fish market. The day of the accident was a bright, sun-shiney day, the street was dry, and the sidewalk was in the same condition that it had been for several years. It was in no worse-condition on the day of the accident than it had been for a couple of years previous.
Appellant relies mainly upon two cases, Brantley v. City of Baton Rouge, La.App., 98 So.2d 824 and Toppi v. Arbour, La.App., 119 So.2d 621 as authority that she was not guilty of contributory negligence. These cases, and in fact most of the cases, have allowed recovery where the defect in the-sidewalk was a trap. This was particularly true in the Brantley case where the Court found “this broken piece of concrete constituted a trap” and that it appeared to be-stable but it was really unstable. In the Toppi case this Court found that plaintiff was lulled into a sense of false security by the safe appearance of that portion of the sidewalk on which she fell. Here in the case at Bar there was no trap because the sidewalk was in the same condition it had been for some time, there was no damp-weather to increase its hazardousness and Mrs. Major was personally familiar with the condition of this sidewalk.
There are two late cases decided by this Court, one Green v. Acosta, 173 So.2d 291, and Jackson et ux. v. Parish of East Baton Rouge, 185 So.2d 589 decided by this Court on April 4, 1966, certiorari denied June 22, 1966, 249 La. 472, 187 So.2d 446.
*832 In Green v. Acosta, supra, plaintiff injured herself when she passed through an area of the sidewalk that was covered with dirt, oil, broken bottles and other trash and she considered this a trap. This Court held in rejecting her demand as follows:
“Knowledge of the condition existing should have prompted plaintiff as a reasonably prudent individual to exercise extreme care and caution in attempting to traverse such a sidewalk rather than attempt such maneuver hurriedly and without due concern for a known peril. We believe the condition of the sidewalk such that even an attempt to negotiate it in daytime would necessitate the use of more than ordinary care, diligence and alertness. Photographs introduced in evidence clearly show a portion of the sidewalk black with oil across its entire width upon which is superimposed debris sufficient to prompt a pedestrian to extreme caution while traversing the area in daylight.
“Learned counsel for appellees vigorously contends plaintiff should be exculpated from contributory negligence herein because the condition noted constituted a trap of which plaintiff was unaware. In this regard it is argued the sidewalk was safe when dry (as evidenced by plaintiff having successfully passed over the area approximately thirty minutes previously) but that it became slippery and dangerous when the rain mixed with the oil present, of which latter circumstance plaintiff was unaware.
“The evidence is conflicting on the question whether the area was slippery during dry weather. Although both plaintiffs testified on trial that the sidewalk was not known to be slippery when dry, plaintiff husband, in a deposition taken prior to trial, stated the site was soft and wet from oil. However, we fail to see wherein plaintiff could be relieved of contributory negligence herein assuming the area was not slippery during dry weather. We repeat that the sidewalk was obviously and patently dangerous and plaintiff’s knowledge of the condition is shown beyond a doubt. Her knowledge necessitated exercise of care commensurate with the danger of which she was aware. We believe the condition such that a person of ordinary prudence, having knowledge of the circumstances, would not attempt to hurry across such an area at night even though the surface were dry. Knowledge of the existing state of the sidewalk should have alerted the wariest individual to exercise extreme caution and care in traveling over such a sidewalk in the dark of night even though its surface was dry. Such a maneuver was fraught with possible danger even during dry weather and the hazard therein existing could only be increased during wet weather, which circumstance must be charged to the knowledge of a reasonably prudent individual in full possession of his faculties.”
In the case of Jackson v. Parish of East Baton Rouge, supra, we held that there was another path open to plaintiff in addition to the one she took and had she taken that path she would not have had the accident, and that she was familiar with that condition. While plaintiff argues strenuously there was no other safe path open to her except to get out on Baton Rouge Avenue, which was a well traveled street, yet other people had chosen to walk around this dangerous situation and there was no reason why she could not have done the same thing.
While the Trial Judge seemed to consider the type of sandals that Mrs. Major was wearing might have had something to do with her accident, we fail to see where these shoes entered into the picture.
The Louisiana Supreme Court in White v. City of Alexandria (1949) 216 La. 208, 43 So.2d 618 held as follows:
“From this jurisprudence there have evolved certain legal principles which are to be considered in determining the *833 instant controversy. Thus, a municipality is not an insurer of the safety of pedestrians. It must keep the sidewalks reasonably safe, but the maintaining of them in perfect condition is not necessary. To render it liable in damages the defect complained of must be dangerous or calculated to cause injury. Defects in sidewalks that are not in the nature of traps, or from which danger cannot reasonably be anticipated, provide no actionable negligence. Such ways of passage are intended for public use, of course, and a pedestrian is entitled to assume that they are not dangerous. Further, he is not required to constantly observe the surface of the walk or to exercise the care that would be necessary in traversing a jungle. However, he cannot be completely oblivious of its condition; he must exercise ordinary care when using it, having in mind the well recognized fact that throughout every city of any size in this state there exist irregularities in the walkways brought about by natural causes such as rains, expansion, soil erosion and tree roots.”
Our text book authorities agree with the holding of our Supreme Court in White v. City of Alexandria, supra. See 63 C.J.S. Municipal Corporations § 854b, page 210; 25 Am. Jurisprudence Highways Section 463, page 754; 19 McQuillin Municipal Corporations Sec. 54.124, page 466.
We believe that Mrs. Major was aware of this condition, had traveled that way frequently, the conditions were easily visible, and she simply failed to use good care for her own safety. Ansley v. City of New Orleans, La.App., 168 So. 343 holds as follows:
“It is the contention of plaintiff that there was no duty, and there is no duty in a pedestrian generally, to focus attention upon a sidewalk, and that a person is justified in assuming that such a sidewalk is safe and that no danger will result from walking along it without looking at it at all; in other words, that a pedestrian may proceed along a sidewalk with his eyes fixed horizontally and without glancing at the sidewalk from time to time to see that there is no defect or danger.
“It is true, that a pedestrian is not required to keep his eyes constantly focused upon the sidewalk and that he may assume that the sidewalk is reasonably safe for pedestrian travel; nevertheless, he must see those defects which are obvious and apparent and which would be noticed by the reasonably and ordinarily prudent passerby.”
For the foregoing reasons we concur in the finding of the Trial Judge that the plaintiff, Mrs. Major, was guilty of contributory negligence which would bar her recovery, and that the judgment is therefore correct and is hereby affirmed.
Affirmed.